(15 App. Div. 205.)

## DISHAW v. WADLEIGH.

(Supreme Court, Appellate Division, Third Department.  March 3, 1897.)

1. ABUSE OF PROCESS—WHEN ACTIONABLE—SUBPŒNA.

An action will lie against an attorney for damages for abuse of process in procuring a nominal assignment of a claim in his hands for collection to a person living 60 miles from the debtor's residence, suing on it there, subpœnaing the debtor, not for the purpose of obtaining his testimony, but to induce him to pay the claim to avoid the inconvenience of attending under the subpœna, and, on the debtor's failure to attend, having him attached, and fined for contempt.

2. SAME—TERMINATION OF PROCESS—PLEADING.

In an action for abuse of process plaintiff need not allege or prove that the action in which the process complained of was issued has been terminated.

3. EVIDENCE—BEST AND SECONDARY—ACCOUNTING FOR WRITING.

No foundation is laid for secondary evidence of the contents of a letter, by testimony of the recipient that he was not asked to produce it, and thinks it is destroyed, but is not sure; no search for it being shown.

Appeal from trial term, St. Lawrence county.

Action by Frank W. Dishaw against L. Ogden Wadleigh. From a judgment entered on a verdict in favor of plaintiff for $500, and from an order denying a motion for a new trial, made on the minutes, defendant appeals. Reversed.

The defendant is an attorney at law, residing and practicing his profession at Potsdam, St. Lawrence county. Some time in the year 1895 he entered into an arrangement with one Charles M. Woodward, who resided at Gouverneur, St. Lawrence county, about 30 miles distant from Potsdam, by which the defendant was to procure accounts to be assigned to the said Woodward, and then Woodward was to commence suits thereon in his own name as plaintiff in the justice's court at Gouverneur, and at the time of having the summons issued in such actions he was also to take out and have served subpœnas upon the defendants therein. In return for such services Woodward received five dollars from the defendant, who also rendered some services for Woodward in looking after his personal affairs. Woodward paid nothing for the claims assigned to him, and upon the trial testified that the reason given to him by the defendant for such procedure was "that a large number of those men, if they were sued there in the town, they would confess judgment, and that the judgment was not collectible; men that were able to pay, and would not pay, and by confessing judgment confessed they owed their account; and that by bringing them to Gouverneur they would, as a rule, pay their accounts." Question by the Court: "That is, they rather pay than come over to Gouverneur, and be subpœnaed to come there?" Answer: "That, as I understand it, is the gist of it." Under this arrangement a number of actions were commenced in the justice's court at Gouverneur by Woodward, and subpœnas for each of the defendants in such actions were taken out. Among the parties so sued was the plaintiff. He was indebted to a man named Tucker, who appears to have resided at Potsdam, in the sum of about $20. This account was assigned to Woodward. The plaintiff resides in the

town of Brasher, about 24 miles from Potsdam, and nearly 60 miles from Gouverneur; several towns intervening between plaintiff's residence and Gouverneur; the usual route from plaintiff's residence to Gouverneur being through the village of Potsdam. A summons and subpœna were served upon the plaintiff. Both were issued at the same time at the request of the defendant, returnable September 28, 1895, at 10 o'clock a. m. To reach Gouverneur at that time the plaintiff would have been obliged to start the day before. Upon the return day the plaintiff did not appear. The defendant thereupon made an affidavit in which he swore that the testimony of the plaintiff was material to the plaintiff in that action, and upon such affidavit an attachment was issued against the plaintiff, and the suit in the justice's court adjourned to a future day. A constable arrested the plaintiff upon such attachment, and brought him before the justice upon the adjourned day, when he was fined $1 for his disobedience to the command of the subpœna, and $15.20, the expenses of the attachment,—amounting in all to the sum of $16.20; and an execution against his person was issued to collect such fine and costs. At the same time judgment was taken against him upon the claim sued for, the plaintiff in that action and his assignor, Mr. Tucker, being sworn as witnesses; and the plaintiff in this action, although present under the attachment, was not sworn as a witness. While the execution against his person was still in the hands of the constable, unserved, the plaintiff brought this action against the defendant, which resulted in the judgment appealed from.

Argued before LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

L. Ogden Wadleigh (William P. Goodelle, of counsel), in pro. per. John A. Smith, for respondent.

HERRICK, J. This case is somewhat novel in its character, and, owing to its peculiar features, my associates have thought that, while this appeal might perhaps be determined upon some of the rulings made upon the trial, yet it would be well to express our opinion upon the question as to whether such an action is maintainable, and also give expression to our views upon the practice indulged in which led to this litigation, and by such expression perhaps relieve the court from resorting to harsher measures to cause a cessation of such practice in this department.

The appellant, as one of the reasons for asking for a reversal of the judgment against him, contends that the facts proved are insufficient to constitute a cause of action. He asserts that every step taken by him was authorized in law. It is true that Tucker had a legal right to assign his account to Woodward; that Woodward had a legal right to bring an action thereon in his own name, in the town where he lived; it is true that a party plaintiff has a right to subpœna the defendant as a witness; it is true, also, that where a witness does not obey a subpœna, it is legal to issue an attachment for him; and all these things can be done, or advised to be done, by an attorney for his client. Still, proceedings that are authorized by law may be made use of for an improper purpose, and acts which separately are legal may be so combined together for an illegal purpose as to constitute a single act that is obnoxious to the law. The facts here disclose a disreputable method of practice, degrading to an honorable profession, and well calculated to bring the administration of justice into reproach and contempt; and it cannot be upheld or justified under the plea that each step taken was one authorized by law, for "the law is just and good, and entitled to the obedience of all, the strong as well

as the weak, and cannot sustain the perversion of its process to shield lawlessness and wrong, or permit it to be made the tool of trickery and cunning." Sneeden v. Harris, 109 N. C. 349, 13 S. E. 920. Here it was sought by trickery and cunning to pervert the processes of the law from their proper use and design, in order to reach a result which it was thought could not be arrived at by the ordinary and legitimate procedure of the courts. The action here under review is not one for false imprisonment, malicious prosecution, or the special action authorized by section 1900 of the Code of Civil Procedure, although it possesses some of the features of each of those actions. It is one, I think, for an abuse of process; something rarely brought to the attention of the courts, except in connection with actions for false imprisonment or malicious prosecution, but for which a separate action will lie, and the attorney guilty of it may be suspended from practice.

Counsel have not referred to, nor have I, after a somewhat careful examination, been able to find, any reported case in this state where an attorney has been held liable in damages for an abuse of process; but, if such an action can be maintained against any one, there is no reason why an attorney should not be held liable, and many why he should. Here the acts complained of were the direct personal acts of the attorney, not dependent upon any evidence or representation of his client or of any third person, as in most cases of malicious prosecution or false imprisonment, but wholly instigated and carried on by the attorney. The action for abuse of process is one well defined at common law. Cooley, in his work on Torts (page 199), lays down the following rule: "If process, either civil or criminal, is willfully made use of for a purpose not justified by the law, this is an abuse for which an action will lie;" and the author proceeds to give some illustrations of such abuses. The leading English case upon the subject is that of Grainger v. Hill, 4 Bing. N. C. 212, where the owner of a vessel was arrested on civil process, and the officer, acting under the direction of the plaintiffs in the suit, used the process to compel the defendant therein to give up his ship register, to which they had no right. He was held entitled to recover damages, not for maliciously putting the process in force, but for maliciously abusing it to effect an object not within its proper scope. In this country it is a well-recognized form of action. "The common-law action for abusing legal process is confined to a use of process for the purpose of compelling the defendant to do some collateral thing which he could not lawfully be compelled to do." Johnson v. Reed, 136 Mass. 421. In that case it was held no abuse of process was alleged. In Herman v. Brookerhoff, 8 Watts, 240, Gibson, C. J., said:

"Though there is a resemblance betwixt an action for the malicious prosecution of a criminal charge and an action for a malicious arrest or holding to excessive bail in a suit, the cases are not entirely parallel. In a criminal prosecution, want of probable cause must be combined with malice; but in a civil suit the existence of a cause of action is not a defense to a suit for an excessive use of the process. * * * The gist of the action in one case is the origination of a malicious and groundless prosecution, which ipso facto put the party in peril; in the other, it is not the origination of an action, but an abuse of the process consequent on it."

44 N.Y.S.—14

If process is willfully made use of for a purpose not justified by the law, this is an abuse for which an action will lie. Antcliff v. June, 81 Mich. 477, 45 N. W. 1019. It is not necessary, as in cases of malicious prosecution, to allege or prove that the proceeding complained of has been terminated. Where process is used to compel a party to do a collateral thing, or to accomplish an ulterior purpose, an action for malicious abuse of process may be maintained, without alleging or proving that the process improperly employed is at an end. Sneeden v. Harris, 109 N. C. 349, 13 S. E. 920. It has also been held, where a person maliciously and without probable cause procured an attachment as auxiliary to his suit, that an action would lie, and that it was not necessary to allege or prove the termination of the first suit, upon the principle that when the termination of the former suit can neither tend to establish nor invalidate the plaintiff's cause of action, it is not necessary to allege its termination. Fortman v. Rottier, 8 Ohio St. 548; Brand v. Hinchman, 68 Mich. 590, 36 N. W. 664.

From the evidence in this case the jury could have found that the defendant caused the subpœna to be issued for the plaintiff in the action against him in the justice's court, and the subsequent attachment to be issued against him, not for the purpose of procuring his attendance, and securing him as a witness in the case, but for the purpose of coercing payment of the claim against him, with the idea, the claim being small, that, rather than submit to the discomfort, inconvenience, and expense of attending court at so great a distance, he would pay the claim. A subpœna is for the purpose of compelling the attendance of a person whom it is desired to use as a witness. Its use for any other purpose is a perversion and abuse of the process of the court. And it seems to me that, within the principle and cases I have referred to, the action is well brought; and, if there is no precedent for it in this state, the facts in this case demonstrate that it is time that one was made. But, while the action is well brought, it is incumbent upon the plaintiff to establish his case by proper evidence. Upon the trial, the plaintiff was allowed to prove orally, by the witness Woodward, the arrangement between the defendant and the witness Woodward for the assignment of the claim against the plaintiff, and also of other assignments of claims, and of the reasons for making such assignments to Woodward, and why he desired suits to be brought upon such claims in the village of Gouverneur. These arrangements were made, and the reasons therefor given, by letter. No sufficient foundation was laid for giving secondary evidence. The witness said: "I can't tell where the letter is. Don't know where it is. Don't think I could find it. I think it has been destroyed, but I am not sure." And again: "I have not been asked to produce those letters here. I have destroyed some of the letters, and some I have not." This evidence does not show that any effort whatever was made to produce the letters, or ascertain that they could not be found. I think it was error to receive such evidence, and error not to have stricken it out upon the defendant's motion. Kearney v. Mayor, etc., 92 N. Y. 617.

The evidence gave color to the transaction in controversy, and was well calculated to influence the jury, and for such error the judgment and order should be reversed, and a new trial granted, with costs to abide the event.   All concur.