(63 Misc. Rep. 73.)

BIANCHI v. LEON et al.

(Supreme Court, Special Term, New York County. April, 1909.)

1. PROCESS (§ 168*)—ABUSE OF PROCESS.
    The use of a process for a purpose foreign to that for which issued is an abuse the law will not tolerate.
    [Ed. Note.—For other cases, see Process, Cent. Dig. § 257; Dec. Dig. § 168.*]

2. DEEDS (§ 71*)—DURESS—ABUSE OF PROCESS—SETTING ASIDE CONVEYANCE.
    Plaintiff's husband, a foreigner, presumably unfamiliar with the methods of procedure, was arrested at night, in an action for fraud upon a claim of $600, bail being fixed at $500, and was immediately taken to the residence of defendant's (plaintiff in that action) attorney, whence he telephoned plaintiff to meet him, which she did. Defendant's attorney then informed plaintiff that he would only withdraw the order of arrest upon condition that he be given security for two other claims besides the one in suit, amounting in all to $7,100, and plaintiff, after a protracted discussion, agreed to turn over corporate stock as security for all the claims, for which a conveyance of real property was afterwards substituted at the same meeting. *Held*, that the conveyance would be set aside as obtained by abuse of process, conditioned, however, upon payment of the $600 involved in the arrest action.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. § 188; Dec. Dig. § 71.*]

Action by Martha G. D. Bianchi against Maurice Leon and another. Finding for plaintiff.

Philip Carpenter, for plaintiff.
George Gordon Battle, for defendants.

GREENBAUM, J. This action is brought to set aside a conveyance of real property from plaintiff to the defendant Leon, an attorney at law, as trustee, upon the ground that the execution of the deed was obtained by abuse of the process of the court and under duress. On March 11, 1907, an order for the arrest of plaintiff's husband was issued in an action for fraud and deceit brought by the defendant Charlotte T. Terry upon a claim of $600. Bail was fixed at $500. The deputy sheriff executed the process by arresting Mr. Bianchi on March 15th at about 6 o'clock p. m. Immediately upon his arrest the defendant was taken to the residence of the defendant Leon, the attorney for Miss Terry. Bianchi telephoned from the attorney's residence to his wife, requesting her to meet him at the Hotel Belmont.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Mrs. Bianchi met her husband and the deputy sheriff at the hotel, and she was apprised of her husband's arrest. An appointment thereafter was arranged with the defendant Leon at the Bar Association, where the parties met at about 9 o'clock.

The witnesses differ in many details as to what transpired at this interview. The defendant Leon testified that he told plaintiff that if she furnished $500 bail to the deputy sheriff her husband would be released, and that if she wished to have the order of arrest withdrawn he would only consent thereto upon condition that he was given security for two other claims of Miss Terry, aggregating $6,500. These claims were asserted to be as follows: One for $3,500 against plaintiff and her husband, and the other for $3,000 against Mr. Bianchi, for which an action was then pending and in which a warrant of attachment had been issued. After a protracted discussion, the plaintiff, who claimed that she was ill and under intense nervous strain, consented to deliver up certain stock in an automobile corporation as security for the payment of all the claims against her husband and herself, to wit, $7,100, which included the claim in the action in which Bianchi had been arrested. All the parties repaired to a private room in the Bar Association for the purpose of preparing the necessary documents. After the attorney had almost completed his dictation of the papers, the plaintiff stated it just occurred to her that she was under agreement not to dispose of the stock which she had promised to deliver up as security. Negotiations were then had looking to the substitution of other security, and it was finally agreed that certain real property at Amherst, Mass., belonging to plaintiff, would be conveyed in trust to Leon, instead of the stock, in settlement of all the claims and as security for their payment. The papers not having been finished by midnight, the parties were obliged to leave the Bar Association building. They adjourned to the Gilsey House, where the documents were completed at about 2 o'clock in the morning, and the parties then repaired to the residence of a notary public, before whom they were duly executed. Plaintiff did not repudiate the agreement until about a week after the occurrences above detailed, and after she had consulted with counsel.

It may be assumed that plaintiff was apprised of the fact that her husband could have been released on bail on the night of his arrest by depositing the sum of $500 in cash. The fact, however, was that neither she nor her husband had $500 in cash available at that time of the day. It appears the plaintiff was well connected and enjoyed the confidence and friendship of persons of standing in the community, and it is evident that she keenly felt the humiliation and disgrace that would result from the incarceration of her husband and the publicity that would likely follow. The clear duty of the deputy sheriff was to keep in custody the defendant in the action in which the order of arrest had been granted until either $500 in cash was deposited with him as bail or a duly approved bond furnished him, or unless sufficient authorization on the part of the plaintiff's attorney in the action was given for the defendant's release. Instead of limiting the order of arrest to the legitimate purpose for which it had been granted, the defendants utilized it to force a settlement of

claims entirely unrelated to the action in which plaintiff's husband was arrested. The use of a process for a purpose foreign to that for which it was issued is an abuse that the law will not tolerate. Dishaw v. Wadleigh, 15 App. Div. 205, 44 N. Y. Supp. 207; Foy v. Barry, 87 App. Div. 291, 84 N. Y. Supp. 335.

The learned counsel for the defendants relies upon McDonald v. Neilson, 2 Cow. 139, 14 Am. Dec. 431, which reversed the decision of Chancellor Kent, reported in 6 Johns. Ch. 201, in support of the legality of the action of Leon in exacting security for $7,100. A study of the Neilson Case on appeal in 2 Cow. 139, 14 Am. Dec. 431, supra, reveals that the appellate court did not differ with the views of the distinguished chancellor upon the subject of an abuse of the process of the court, vigorously expressed as follows:

"Nothing can be more injurious to public morals, or excite greater alarm in the minds of the people, than to suffer the process of law to be made the instrument of extortion."

The majority of the appellate court reversed the chancellor upon the equitable principle that:

"Courts of equity never interfere to deprive the plaintiff of any legal advantage which he may have gained unless the party seeking relief will do complete justice by paying what is really due."

It appeared in that case that the settlement which it was sought to set aside originated with the respondent, under advice of his friends and counsel and with full knowledge of his rights, and that the party seeking the equitable intervention of the court had himself been guilty of misconduct which prevented the appellant from collecting an admittedly honest debt.

The circumstances attending the execution of the deed in suit are quite different in character from those present in the Neilson Case. In the latter the sheriff's sale, attacked as having been unfairly and oppressively conducted, was strictly in conformity with law, and the only criticism of the majority of the appellate court was that the sheriff should have postponed the sale to have afforded the respondent a reasonable opportunity to provide himself with specie to meet the demands of the sheriff, who gave notice that he would require specie for all purchases at the sale. In the case at bar the plaintiff had no counsel, her husband was a foreigner, presumably unfamiliar with our methods of procedure, the arrest took place at night, and the defendants insisted upon a settlement of all the claims against Bianchi as a condition of discharging Bianchi from the custody of the sheriff. Plaintiff's husband did not appear upon the trial of the action, nor was his deposition submitted, and there seems to be no doubt that the defendant Miss Terry parted with $600 upon the fraudulent representations of Bianchi, and that the order of arrest was well founded. The circumstances under which Bianchi obtained other moneys from the defendant Terry, claimed to be due to her, may indicate doubtful practices on his part; but, nevertheless, these claims are not so intimately connected with the cause of action in which the order of arrest was granted as to justify the court, under the circumstances detailed, in holding that plaintiff, who evidently was not a

party to her husband's methods of procuring money from Miss Terry, should be compelled to pay the claims asserted against her and her husband, aggregating $6,500.

The plaintiff should be afforded an opportunity, if she desires, to contest the validity of the claim made against her. I am of opinion, however, that duress or abuse of process may not be predicated so far as the settlement affected the claim in the action in which the order of arrest was issued, and, as he who seeks equity must do equity, the conveyance will be set aside only upon the payment of $600 and interest, the amount involved in the arrest action, or, in the event of the nonpayment of said sum, the conveyance shall stand as security only for the said sum of $600 and interest. Neilson v. McDonald, 6 Johns. Ch. 201, 210.

Submit decree in accordance with foregoing conclusions.

Ordered accordingly.