### BIANCHI v. LEON et al.

(Supreme Court, Appellate Division, First Department. May 6, 1910.)

DEEDS (§ 71*)—VALIDITY—DURESS—ABUSE OF PROCESS.

Plaintiff's husband, who had obtained $600 from defendant by fraud, was arrested in a civil suit therefor; the order of arrest fixing bail at $500. At the time of the arrest, the officer told the husband the amount of bail fixed, and offered to go with him to any friends who might assist him. Instead of that, he asked to be taken to defendant's attorney and had his wife meet him there. Plaintiff requested the attorney to release her husband without bail, promising that the debt should be paid the next day; but the attorney refused to consent to the release unless plaintiff would secure other debts due to defendant by plaintiff and her husband amounting to $6,500. Plaintiff was entirely familiar with the facts, and was offered an opportunity to obtain independent legal advice, and was told that her husband could be released on only $500 bail. Instead of doing this, she gave a deed of her lands to the attorney as trustee to secure all the debts owing to defendant, amounting to $7,100. *Held*, that plaintiff was not entitled to avoid the deed on the ground that it was obtained

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by duress, consisting of abuse of the order of arrest; the arrest being undoubtedly valid and authorized, and the manner of its execution not being oppressive.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 183–189; Dec. Dig. § 71.*]

Appeal from Special Term, New York County.

Suit by Martha G. D. Bianchi against Maurice Leon and another. From a judgment for plaintiff (63 Misc. Rep. 73, 118 N. Y. Supp. 386), defendants appeal. Reversed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Battle & Marshall (George Gordon Battle, of counsel), for appellant Terry.

Henry Winthrop Hardon (Charles F. Brown and Charles Steward Davison, on the brief), for appellant Leon.

Phillip Carpenter, for respondent.

CLARKE, J. This is a suit in equity to set aside a conveyance of certain land in Amherst, Mass., executed and delivered by the plaintiff to the defendant Leon for the purpose of securing payment to the defendant Terry of certain sums amounting to $7,100 claimed to be due and owing to her, $3,500 by the plaintiff, $600 jointly by the plaintiff and her husband, and $3,000 by her husband. The complaint alleges that the conveyance was obtained through false representations, threats, fear, and duress. The judgment of the court is based upon an abuse of process, and grants the relief prayed, except in so far as the conveyance is security for $600.

The defendant, Miss Terry, and her sister, kept a boarding house in the city of New York and had known the plaintiff, who was a Miss Dickinson before her marriage, for many years. Their terms of acquaintance had been very friendly, Miss Dickinson and her mother had frequently boarded at the Misses Terry's house on their visits to New York, and they had visited the Dickinsons at their home in Amherst. In 1904 Miss Dickinson married Alexander Bianchi, an Italian who claims to have served in the Russian army.

Plaintiff testified that she had ample means when she married and supported herself in the main after her marriage. She and her husband boarded with the Misses Terry, and, when she was not in town, Bianchi had a room with them himself for some time.

Beginning with 1904, upon plaintiff's request, Miss Terry let Bianchi have various sums of money. Since May 25, 1905, plaintiff or her husband received from Miss Terry upwards of $9,000 and paid back about $2,000. $3,500 upon Mrs. Bianchi's request was deposited by Miss Terry to Mrs. Bianchi's account. $3,000 Bianchi got himself. He gave Miss Terry a worthless draft for upwards of 11,000 francs at one time, and he obtained from her $600 on a note on the fraudulent representations that he had sold a couple of automobiles to one Allison; that they were at the custom house; that he needed the $600 to pay the duties; and that if he got that amount and paid the duties he

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

would be able to return to Miss Terry not only his loan of $600, but also the loan of $3,000 borrowed by him from Miss Terry on or about the 1st of June, 1905, with the unpaid interest thereon.

It was upon this transaction, the note not having been paid, that an action was brought against Capt. Bianchi by Miss Terry, the defendant Leon appearing as her attorney therein, and an order of arrest was obtained. The complaint was verified March 8, 1907, the order of arrest was signed on March 11th, and the papers delivered to the sheriff on that day. Those papers consisted of a summons and complaint, the affidavit of Miss Terry, the affidavit of Allison that he did not at any time buy an automobile from Bianchi, and that his representations in that regard were false, and an affidavit by Leon that he had examined the records in the custom house, and that there is no record of any automobile imported during the month of February, 1907, by Bianchi, and no record of any payment of duty on any automobile imported by him during that month. Miss Terry also began a suit at the same time against Bianchi for the $3,000, and obtained a warrant of attachment upon the ground of nonresidence. The papers in both suits were given to Deputy Sheriff Altman for service on the 11th of March. Altman testified that he was unable to find Bianchi, although he searched and inquired for him until the 15th of March; that with a maid of Miss Terry's he watched the apartment house, 34 Gramercy Square, where the Bianchis had rooms, from 4 o'clock in the afternoon of that day until, at 6 o'clock, this maid pointed out Bianchi, who was then approaching the house, as the defendant. The deputy sheriff thereupon served him with the papers in the attachment suit and put him under arrest in the $600 suit.

Plaintiff's counsel made this concession upon this trial:

"We are not criticising the deputy here. The deputy did his duty."

This concession was also made in regard to the action on the $600 in which the arrest was had: That for the purpose of this case the facts stated in the affidavits were correct. And in its opinion the court said:

"Plaintiff's husband did not appear upon the trial of the action, nor was his deposition submitted, and there seems to be no doubt that the defendant Miss Terry parted with $600 upon the fraudulent representations of Bianchi, and that the order of arrest was well founded. The circumstances under which Bianchi obtained other moneys from the defendant Terry claimed to be due to her may indicate doubtful practices on his part."

And the sixteenth finding of those proposed by the defendant, which the court allowed, is as follows:

"That plaintiff's husband obtained from the defendant Terry the sum of $600 on or about the 11th day of February, 1907, by fraud and deceit; that said defendant Terry was entitled to the order of arrest granted herein on March 11, 1907."

After the arrest a conference was had, upon Bianchi's request, with the defendant Leon; Mrs. Bianchi being present. As a result thereof Mrs. Bianchi executed the conveyance in suit as security for the repayment of all moneys obtained by herself and her husband from Miss Terry, and Bianchi was released from arrest. The court has

set aside this conveyance except as to $600, as having been obtained by abuse of process.

. Among the findings proposed by the defendants, the court found the following:

That when the deputy sheriff arrested Bianchi he called his attention to the fact that under the order of arrest bail was fixed at $500, and offered to accompany him to any friend or friends to whom he could apply for help in connection with the furnishing of bail, and that he would permit him to telephone to his wife. That Bianchi then requested the deputy sheriff to take him to Miss Terry's lawyer.

That while at Leon's house, Bianchi requested Leon to direct his release without bail, and stated that if that was done Miss Terry's claims would be settled the next day, and was told by Leon that he would not direct his release without bail until after security was given for claims aggregating $7,100, existing in favor of Miss Terry against Bianchi and his wife.

That thereupon Bianchi telephoned to the plaintiff at their apartment, and requested her to meet him at the Hotel Belmont, and then asked Leon where he could be reached later in the evening, whereupon said defendant stated he could be found at the Bar Association after 9 o'clock. That about 8 p. m. plaintiff met Bianchi and the deputy sheriff at the Hotel Belmont, and was then first apprised of her husband's arrest, and was told that his bail had been fixed at $500. That plaintiff met Leon, her husband, and the deputy sheriff at the Bar Association at about 9 p. m.

That plaintiff had a telephone conversation with the defendant Terry, and thereafter Leon repeated his statement to the plaintiff that he would only consent to a withdrawal of the order of arrest and the waiving of bail thereunder upon condition that Miss Terry's claims aggregating the sum of $7,100 be secured, and that if that was not done he, the said Leon, would do nothing to help her, and the law must take its course.

That at the time Leon called plaintiff's attention to the fact that she was in a building occupied by an association comprising most of the foremost lawyers in the city, that many lawyers were within reach, and that, if she desired to have counsel not in any way partial to the defendants herein, this could be arranged at once.

That at the Bar Association before 10 p. m. on March 15, 1907, the plaintiff consented to furnish security for the aforesaid claims aggregating $7,100 as a condition to obtaining the release of her husband without bail, and first offered to assign certain stock which she stated was then in Paris. That upon being requested to sign an affidavit of title to said stock reciting her absolute right to convey the same, she stated that the said stock was not assignable. That thereupon she agreed to convey to the defendant Leon, as trustee for the defendant Terry, as security for said defendant Terry's claims, certain seven lots of unincumbered vacant land belonging to her, situated in Amherst, Mass., which she stated to be worth upwards of $7,100. The defendant Leon thereupon proceeded to prepare the papers to carry out such agreement.

That when the Bar Association closed at midnight, the said papers were not completed, and the plaintiff thereupon accompanied her husband and the deputy sheriff and said defendant Leon to the Gilsey House, where the papers were completed at about 2 o'clock in the morning. That the plaintiff then with her husband and the deputy sheriff and the said defendant Leon went to the residence of a notary public and there executed and acknowledged the conveyance to the defendant Leon, as trustee, as security for the sum of $7,100 (Exhibit D), and the same was retained by said defendant Leon, who at the same time delivered to the plaintiff a paper bearing even date therewith, signed by him (Exhibit E).

This paper reads as follows:

"New York, March 16, 1907.

"Dear Madam: You have this day delivered to me as trustee a deed of certain property at Amherst, Mass. This conveyance is made to secure the claims of Miss Charlotte T. Terry, aggregating $7,100 and interest, referred to in said deed. Our agreement is that I am not to sell or convey the title received by me under this deed, unless default is made in the payment of the sums therein provided to be made at times mentioned in the deed, which payments are to be made to me. Upon payment and discharge of said indebtedness as provided in said deed, I shall convey to you the same title which you have conveyed to me by said deed. All obligations and evidences of the indebtedness referred to in said deed are to be returned to you upon the payment of said indebtedness, including two notes for $600, each dated February, 1907, the first of such notes being renewed by the second, each made by your husband, Alexander Bianchi, payable to you and indorsed by you, and a check for 11,500 francs on the Nice Agency of the Comptoir National D'Escompte, dated June 9, 1905, payable to the order of Charlotte T. Terry, and signed by your husband. In case of any default, should I be satisfied that an extension of time will not be prejudicial to my client's rights, and is reasonable, under such circumstances, as may arise, I shall, in my discretion, give such extension. All payments are to be made to me as attorney for Miss Terry, at my office, 80 Wall Street, New York City.

"Very truly yours,    Maurice Leon.

"Attest: Charles Alvin Rogers, Notary Public No. 62, New York County."

The deed (Exhibit D) provides, inter alia, as follows:

"To hold the same until the sum of $7,100, with interest upon $5,500 thereof from the 2nd day of June, 1905, upon $2,000 thereof from the 24th of February, 1906, upon $1,000 thereof from the 31st day of March, 1905, and upon $600 thereof from the 28th day of February, 1907, which said sums are justly due and owing as to $4,100 thereof by me and my husband, Alexander Bianchi, jointly and severally to Charlotte T. Terry, and as to the balance of said principal sum owed by my said husband, Alexander Bianchi, to said Charlotte T. Terry, shall be paid. Said principal sum of $7,100 so due to be paid as follows: $2,000 on the 10th day of June, 1907, $2,000 on the 10th day of August, 1907, $3,100 and interest accrued on the whole principal sum on the 1st day of November, 1907. Should I or my said husband prove any payments heretofore made on account of said principal or sums, or on account of interest accrued thereon, it is understood and agreed that such sums are to be credited on the claims above referred to."

This deed was acknowledged before the notary as her free act and deed.

That thereupon the defendant Leon made the following indorsement upon said order of arrest:

"The sheriff of New York county is hereby directed to discharge from custody the defendant named in the within order of arrest. New York, March 16, 1907."

And the deputy sheriff then released the plaintiff's said husband from custody.

That said conveyance was induced by the plaintiff's desire to save her husband from spending any time in jail, although the deputy sheriff stated to her prior to such conveyance that no disgrace was involved in going to jail under a civil order of arrest.

That the promissory note for $600 which Alexander Bianchi induced the defendant Terry to accept when he obtained from her the $600 by fraud and deceit on or about February 11, 1907, was indorsed by the plaintiff herein. That some time later, on or about March 4, 1907, said Bianchi sent to the said defendant Terry a second note for said $600, also indorsed by the plaintiff herein. That nothing was ever paid on either of said notes.

That the deed was recorded in Hampshire county, Mass.

That on March 11, 1907, an action was begun in this court by the defendant Terry, as plaintiff, against Alexander Bianchi, for the recovery of a loan of $3,000 with interest from June 1, 1905. In said action an attachment was granted on March 11, 1907, against the property of Alexander Bianchi, on the ground of nonresidence. That on the same day the sheriff of New York county, by virtue of said warrant of attachment, attached two automobiles stored in this county in the name of said Alexander Bianchi, as to which said Alexander Bianchi, with plaintiff's knowledge, had executed a chattel mortgage as the owner of said automobiles. That after the 16th day of March, 1907, and prior to the beginning of this action, plaintiff served on the sheriff of New York county a notice that she was the owner of said two automobiles and demanded their release from the attachment levied thereon in favor of defendant Terry. That pursuant to said notice said automobiles were released from said attachment.

That on March 18, 1907, in the afternoon, plaintiff, accompanied by her husband, called on the defendant Leon at his office in this county, without any request to do so on defendant's part, and made to him a proposition set forth in Exhibit 8. Said exhibit is as follows:

"To Mr. Leon—Dear Sir: In regard to the matter of the land placed in your hands temporarily as security by me, I wish to ask for a delay of ten days in recording the deed. My object in doing this is to obtain time to get certain foreign securities of mine into the hands of a company in New York who offer to advance me such moneys as would be necessary to me to include all such obligations as are agreed to exist between my husband and myself on one hand and Miss Charlotte T. Terry. An extension of ten days I am assured would be sufficient and should I be the subject of a few days longer through no fault of my own, I should expect it to be granted me. Of course I bind myself not to put my land out of my hands in the meantime.

"Very truly yours,　　　　　　　　M. G. D. Bianchi."

That before she executed the deed (Exhibit D) the plaintiff knew that she could secure her husband's release upon furnishing bail in the sum of $500.

Notwithstanding the foregoing facts as found by the court, it found the following conclusions of law:

"(1) That the said conveyance was obtained from the plaintiff through the abuse of the said process of arrest by the defendants, who secured thereby a settlement of the said claims, aggregating $6,500, * * * which claims were entirely unrelated to the claim of $600, upon which the action was founded, in which said process of arrest was issued.

"(2) That the conveyance aforesaid * * * be vacated and set aside and declared void, upon payment by the plaintiff to the defendant Terry of the sum of $600, with interest from February 11, 1907, that being the amount claimed in the action in which the said order of arrest was issued, * * * or, in the event of the nonpayment of said sum, the said conveyance shall stand as security, but only for the said sum of $600 with interest."

The findings and conclusions in their omissions, as well as in what what they find, exclude fraud, false representations, and duress alleged in the complaint: First, because they are not found; and, second, because the conveyance could not have been sustained as security to the amount of $600 if the court had found fraud or duress. Further there is nothing in the case which would sustain a finding or an inference of fraud or misrepresentation. The judgment stands, then, absolutely upon the findings, as well as upon the opinion, upon the ground of abuse of process. That being based upon the fact that the security was given for other amounts conceded to be due, with the qualifications that if payments could be proved to have been made applicable either to interest or principal, such payments should be credited in the final settlement.

Can abuse of process be predicated upon the facts shown? It appears that plaintiff had full knowledge of the facts, that the order of arrest was valid, that she was more or less connected with the incurring of the other debts, and that she knew that bail for $500 would release her husband from custody. Did the desire to save her husband from being locked up under the order of arrest, under the circumstances disclosed, make her act in executing and delivering the conveyance of no effect? Can she now, the consideration therefor, the release of her husband, having passed, avoid her deed?

I have reached the conclusion, from the careful examination of this record and the principles of law which should govern, that the findings of fact negative the conclusion of law of abuse of process. There is no suggestion of a conspiracy between Leon and the deputy by which the arrest was to be made use of as a lever to procure a general settlement. There is no proof that Leon had given any directions to have Bianchi brought to his house or had any idea of seeing him as a result of the arrest. Every step in these proceedings, after the arrest of Bianchi, was taken upon the initiative of Bianchi or his wife. The deputy sheriff told him he could confer with his friends. Instead, he asked to be taken to Miss Terry's attorney, and all the telephoning and all the engagements and all the talk and all the offers came from the Bianchis. It is conceded that the deputy's conduct was beyond reproach. He informed plaintiff of the small amount of bail. He said arrest under civil process involved no disgrace. He suggested consultation with friends. So there was neither an unlawful and ulterior purpose in the issuance of process, nor an unreasonable and oppressive execution thereof.

In Am. & Eng. Enc. of Law, vol. 1, p. 222, the definition is given:

"A malicious abuse of legal process is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect."

This process was intended to effect the arrest of the defendant Bianchi and the keeping of him in custody until he gave bail, in order to secure by legal duress the payment of the money which he had fraudulently obtained. This security was given by the plaintiff for the purpose of avoiding the legal custody of her husband under the legal order of arrest. It was her initiative, and not that of Leon or Terry, which produced it. All she had to do was to let him go to jail or give bail. For reasons of her own she agreed to pay debts, some of which she had incurred herself, and all of which she had participated in, and none of which have been paid to this day.

In 32 Cyc. 541, under Abuse of Process, it is said:

"(b) Elements. It has been said that two elements are necessary, an unlawful and ulterior purpose and also an act done in the use of the process not proper in the regular prosecution of the proceeding. But it seems doubtful whether both of these elements must always be present. * * * It has been held that a malicious abuse of legal process consists in the malicious misuse or misapplication of that process to accomplish some purpose not warranted or commanded by the writ. And it has also been said that whoever makes use of the process of the court for some private purpose of his own, not warranted by the exigency of the writ or the order of the court, is answerable to an action for damages for an abuse of the process of the court. Similar expressions occur in many cases. None of these statements include the second element above set forth. On the other hand, the second element alone has been held sufficient to impose liability, as where a writ is executed against property in an unreasonable and oppressive manner; where, after arrest upon civil or criminal process, the party arrested is subject to unwarrantable insult or indignities, is treated with cruelty, is deprived of proper food or shelter, or is otherwise treated with oppression and undue hardships; or where a summons is served in an unreasonable, cruel, and oppressive manner."

In the leading case of Grainger v. Hill, 4 Bing. N. C. 212, which was an action on the case to recover damages for abuse of process, in September, 1836, the plaintiff had mortgaged a vessel of which he was the owner as well as captain; the money to be repaid in September, 1837, and plaintiff to retain the register of the vessel in order to pursue his voyages. In November, 1836, the defendants, under some apprehension as to the sufficiency of their security, resolved to possess themselves of the ship's register, and for this purpose, after threatening to arrest the plaintiff unless he repaid the money lent, sued out a capias in an action of assumpsit and sent the sheriff's officers with a writ to the plaintiff, who was lying in bed ill from the presence of a wound. The officers told the plaintiff that they had not come to take him, but to get the ship's register, but that if he failed to deliver the register or to find bail they must either take him or leave one of the officers with him, and the plaintiff, being unable to procure bail and being much alarmed, gave up the register. Park, J., said:

"This is a case primæ impressionis, in which the defendants are charged with having abused the process of the law, in order to obtain property to which they had no color of title."

Vaughn, J.:

"It is an action for abusing the process of law, by employing it to extort property to which the defendants had no right. That is of itself a sufficient

cause of action without alleging that there was no reasonable or probable cause for the suit itself."

Bosanquet, J.:

"The process was enforced for an ulterior purpose, to obtain property by duress, to which the defendants had no right."

So in Dishaw v. Wadleigh, 15 App. Div. 205, 44 N. Y. Supp. 207, a scheme had been devised which the court characterized as follows:

"The facts here disclose a disreputable method of practice, degrading to an honorable profession, and well calculated to bring the administration of justice into reproach and contempt. * * * Here it was sought by trickery and cunning to pervert the processes of the law from their proper use and design, in order to reach a result which it was thought could not be arrived at by the ordinary and legitimate procedure of the courts."

Foy v. Barry, 87 App. Div. 291, 84 N. Y. Supp. 335, was a case where a constable of Essex county had arrested the plaintiff in the city of New York upon a criminal warrant issued by a justice of the peace of Essex county which was not indorsed by a magistrate in New York county, and after the arrest the defendants threatened to take plaintiff to Essex county under the warrant unless he procured his father to withdraw a claim which he had against one of them which was then in litigation, and in addition to pay them a sum of money. It is quite evident that here was both the improper and ulterior motive and the improper use of a criminal warrant to enforce a settlement of a civil case and to extort money.

In Adams v. Irving National Bank, 116 N. Y. 606, 23 N. E. 7, 6 L. R. A. 491, 15 Am. St. Rep. 447, and in many cases cited therein, a settlement was set aside as having been brought about by threat of criminal prosecution. There can be no doubt that these cases were correctly decided, for the obtaining of a settlement under a threat of criminal prosecution is blackmail, as defined by sections 856, 857, and 858 of the penal law (Consol. Laws, c. 40); the cases relating thereto having been examined by us in People v. Wickes, 112 App. Div. 39, 98 N. Y. Supp. 163.

We think the case at bar comes within the following line of decisions: Farmer v. Walter, 2 Edw. Ch. 601:

"But it can never be that if a party is arrested by due process of law for a debt or demand claimed to be due, and he chooses to compromise by giving his note or bond for the purpose of obtaining his liberty, although for the want of bail he may be unable to obtain it in another way, that such compromise will be set aside and the bond or note be decreed to be delivered up. There must be something to denote fraud or illegality in the proceeding or in the mode of obtaining the security to authorize the court to interfere."

See, also, Kavanagh v. Saunders, 8 Me. 422; Smith v. Monteith, 13 M. & W. 427; Grimes v. Briggs, 110 Mass. 446; Johnson v. Reed, 136 Mass. 421.

In Clark v. Turnbull, 47 N. J. Law, 265, 54 Am. Rep. 157, a man had been arrested in a civil action, and while in custody his brother, in settlement, had advanced cash and given a promissory note. In the suit upon the note the defendant advanced two grounds: One, that the note was obtained by duress of imprisonment; the other, that no debt was due at the time the suit was brought or when possession of

the note was obtained by defendant's indorsement to plaintiff in settlement; that the discharge from imprisonment lost her no right, and the note was therefore without consideration. The court said:

"I take it to be the settled law that where one, believing he has a cause of action against another, by lawful process causes him to be arrested and imprisoned, and the defendant voluntarily execute a deed or make a contract or pay the money claimed for his deliverance, he cannot avoid such deed or contract by duress of imprisonment or reclaim the money as extorted from him, although in fact the plaintiff had no good cause of action, 1 Black, Com. 136; Watkins v. Baird, 6 Mass. 506 [4 Am. Dec. 170], and cases cited."

In Van Campen v. Ford, 15 N. Y. St. Rep. 310, Van Brunt, P. J., speaking for the General Term, said:

"This action was brought to set aside a note and a mortgage made by the plaintiff to secure the note upon the ground that the note and mortgage were obtained by duress, and that the same was given to secure a debt of her husband and was without consideration. * * * It is claimed by the defendant that the note and mortgage was given by the plaintiff to relieve her husband from arrest in an action brought by the defendant's testator against him, and that in consideration of the note and mortgage he released the husband from arrest and refrained from prosecuting the suit against him. If this claim had been sustained by the evidence, a consideration for the note and mortgage would have been made out."

This case was a second time before the Supreme Court in Van Campen v. Ford, 53 Hun, 636, 6 N. Y. Supp. 139. The evidence tended to show that while under arrest Van Campen requested his wife to relieve him from such arrest by settling the claim in an action then pending against him, and that at his request plaintiff made to defendant's attorney the proposition of settlement which was to give the note and to execute the mortgage involved in this suit in consideration of which was the release from arrest of Van Campen and the discontinuance of the suit against him. Barrett, J., with whom sat Van Brunt, P. J., and Daniels, J.:

"When this case was previously before the General Term, it was held that the instruments in question were free from the taint of duress, and that the plaintiff had fully recognized their validity. The same conclusion was arrived at upon the present trial, and the evidence again amply supports it. The new trial was ordered upon the sole ground that the case showed a want of consideration for the original note and mortgage renewed by the instruments in suit. This consideration was clearly shown upon the trial now under review. There was sufficient evidence, both direct and circumstantial, of the arrest of the plaintiff's husband. The surrounding circumstances, too, all point in that direction. The arrest was lawful, and the defendant's testator was guilty of no impropriety with regard to it. The plaintiff was not appealed to by the defendant's testator to secure her husband's release, nor was she subjected to anything in the nature of duress or threat. On the contrary, she voluntarily requested Mr. Ford's attorney to accept her obligation in settlement of the suit. This was acceded to; the consideration being the release of her husband and the discontinuance of the suit. The attorney, in compliance with this agreement, filed a consent of discontinuance with the clerk, and the plaintiff's husband was released from any restraint attaching to the order of arrest."

We are of the opinion that none of the elements necessary to constitute an abuse of process exist in the case at bar, and that, therefore, the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.