586 P.2d 1295

Charles RONDELLI, Appellant,

v.

The COUNTY OF PIMA, a body politic, and the City of Tucson, a municipal corporation, Appellees.

Nos. 2 CA–CIV 2729, 2 CA–CIV 2841.

Court of Appeals of Arizona, Division 2.

July 25, 1978.

Rehearing Denied Sept. 14, 1978.

Review Denied Oct. 5, 1978.

Miller, Pitt & Feldman, P.C. by Janice A. Wezelman, Tucson, for appellant.

Everett, Bury & Moeller, P.C. by David C. Bury and Marshall Humphrey, III, Tucson, for appellee County of Pima.

Slutes, Browning, Zlaket & Sakrison, P.C. by Thomas A. Zlaket, Tucson, for appellee City of Tucson.

## OPINION

HATHAWAY, Judge.

Plaintiff-appellant Charles Rondelli appeals from two summary judgments one in favor of defendant-appellee Pima County, and the other in favor of defendant-appellee City of Tucson. By stipulation of the parties, the appeals have been ordered consolidated.

On August 18, 1976, appellant and three other plaintiffs filed an action in tort and civil rights in the Pima County Superior Court against the State of Arizona, Pima County and the City of Tucson. The complaint alleged false arrest and imprisonment in Count One, abuse of process in Count Two, intentional and/or negligent infliction of emotional distress and the tort of outrage in Count Three, and violation of

civil rights, pursuant to 42 U.S.C. § 1983, et seq., in Count Four. Appellant sought damages for his arrest on July 27, 1975, by a Pima County Deputy Sheriff acting pursuant to a bench warrant issued by a magistrate of the Tucson City Court. The criminal charge against appellant was subsequently dismissed in Tucson City Court on July 28, 1976.

The four cases were ordered severed. After answering appellant's complaint, Pima County filed a motion for summary judgment, asserting that Counts One and Four were barred by the statute of limitations and that Counts Two and Three failed as a matter of law to state claims, respectively, for abuse of process and outrage. Thereafter, the City of Tucson filed a motion for summary judgment on the same grounds. Appellant presented no opposition as to Count One, but did oppose the motions as to the remaining counts.

Appellant did not file his complaint until August 18, 1976, more than one year after his arrest, the day his claims for relief accrued. He does not challenge the rulings that the statute of limitations had run on his claim in Count One for false arrest and imprisonment.[1] He does contend, however, that there was error in granting appellees' motions for summary judgment on Count Four [2] of the complaint in that the claim for violation of civil rights under 42 U.S.C. § 1983 [3] was timely.

Congress has not enacted a statute of limitations applicable to suits arising under § 1983. In such circumstances, it is well settled that federal courts apply the most analogous state statute of limitations to these federally-created claims. *Chambers v. Omaha Public School District,* 536 F.2d 222 (8th Cir. 1976); *Smith v. Cremins,* 308 F.2d 187 (9th Cir. 1962); *O'Sullivan v. Felix,* 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914). Unlike some other states, Arizona has not enacted a statute of limitations which is specifically made applicable to § 1983 suits. The question then is which Arizona statute of limitations is most appropriate here.

Appellant urges that the applicable statute is A.R.S. § 12–542(1) which provides for a two-year limitation in actions for personal injury. He contends that the statute should apply here since the basis of the § 1983 claim is the tortious conduct constituting false imprisonment, abuse of process and the intentional infliction of emotional distress, and that though the limitations period for false imprisonment is one year, A.R.S. § 12–541, the limitations period for abuse of process and the intentional infliction of emotional distress is two years, A.R.S. § 12–542. Appellees argue that the applicable statute is A.R.S. § 12–541(3) which provides for a one-year limitation in actions "Upon liability created by statute, other than a penalty or forfeiture." The courts have divided on this issue.[4]

1. A.R.S. § 12–541. "There shall be commenced and prosecuted within one year after the cause of action accrues, and not afterward, the following actions: 1. For malicious prosecution, or for false imprisonment, . . . ."

2. In Count Four, appellant incorporated by reference the three previous counts and then alleged:

"XXI.
Defendants' failure to notify Plaintiffs of outstanding warrants, and the procedures followed by Defendants constitute a violation of the United States Constitution and of the Constitution of the State of Arizona.

XXII.
Said actions have violated the due process requirement of the Fifth and Fourteenth Amendments; the prohibition against unlawful seizures of the Fourth Amendment; and the prohibition against issuance of warrants

without probable cuase [sic] of the Fourth Amendment."

3. "§ 1983. Civil action for deprivation of rights
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

4. See Brophy, *Statutes of Limitations in Federal Civil Rights Litigation,* 1976 Ariz.State L.J. 97. It has been held, though consistently only by the Third Circuit, that the applicable statute of limitations is that for the underlying common law tort. *Polite v. Diehl,* 507 F.2d 119 (3rd Cir. 1974); *Madison v. Wood,* 410 F.2d 564 (6th Cir. 1969); *Beard v. Stephens,* 372 F.2d 685

We agree with appellees, since analogizing the facts of a statutory Civil Rights Act claim to a common law cause of action fails to recognize significant and fundamental differences between the two. *Teague v. Caterpillar Tractor Company*, 566 F.2d 7 (7th Cir. 1977). "The Civil Rights Acts do not create 'a body of general federal tort law.' *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976)." *Beard v. Robinson, supra*, 563 F.2d at 336.

█ In Arizona, " . . . a liability created by statute . . . " is a liability that comes into being solely by statute and one which had no existence prior to the enactment creating it. Where liability would exist in some form irrespective of the statute, it is not " . . . a liability created by statute . . . ." *Maricopa County Municipal Water Conservation Dist. No. 1 v. Warford*, 69 Ariz. 1, 206 P.2d 1168 (1949). The term "statute" is broad enough to include a liability created by the state constitution. *Griffen v. Cole*, 60 Ariz. 83, 131 P.2d 989 (1942).

In *Smith v. Cremins, supra*, the federal court, faced with a choice between separate limitation statutes applicable to each analogous common law tort and a California statute applicable to any " . . . liability created by statute . . . " chose the latter for the following reasons:

"The California courts have held that an action is based 'upon a liability created by statute,' within the meaning of Section 338(1), if the liability would not exist but for statute. Or, conversely, an action is not based 'upon a liability created by statute' if the right is one which would exist at common law in the absence of statute. Though broadly stated, the distinction drawn is sufficiently discriminating for the present case.

Section 1983 of the Civil Rights Act clearly creates rights and imposes obligations different from any which would exist at common law in the absence of statute. A given state of facts may of course give rise to a cause of action in common-law tort as well as to a cause of action under Section 1983, but the elements of the two are not the same. The elements of an action under Section 1983 are (1) the denial under color of state law (2) of a right secured by the Constitution and laws of the United States. Neither of these elements would be required to make out a cause of action in common-law tort; both might be present without creating common-law tort liability. As Mr. Justice Harlan recently suggested, 'a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right.' [*Monroe v. Pape*, 365 U.S. 167, 196, 81 S.Ct. 473, 488, 5 L.Ed.2d 492, 510 (1961), (concurring opinion)] Practical considerations also support the selection of California's 'liability created by statute' limitation. According to appellees' analysis, the single cause of action under the Civil Rights Act alleged in the complaint includes three distinct causes of action under State law and calls for the application of two distinct State statutes of limitations; appellant suggests still another possibility. Inconsistency and confusion would result if the single cause of action created by Congress were fragmented in accordance with analogies drawn to rights created by state law and the several differing periods of limitation applicable to each state-created right were applied to the single federal cause of action." 308 F.2d at 189.90.[5]

(5th Cir. 1967). Other courts have held that the applicable statute of limitations is that for actions based upon a liability created by statute. *Rosenberg v. Martin*, 478 F.2d 520 (2nd Cir. 1973); *Swan v. Board of Higher Education of City of New York*, 319 F.2d 56 (2nd Cir. 1963); *Donovan v. Reinbold*, 433 F.2d 738 (9th Cir. 1970); *Smith v. Cremins*, 308 F.2d 187 (9th Cir. 1962); *Nevels v. Wilson*, 423 F.2d 691 (5th Cir. 1970). Yet other courts have applied a general statute of limitations. *Beard v. Robinson*, 563 F.2d 331 (7th Cir. 1977), overruling *Jones v. Jones*, 410 F.2d 365 (7th Cir. 1969); see *Glasscoe v. Howell*, 431 F.2d 863 (8th Cir. 1970).

5. Accord: *Strung v. Anderson*, 452 F.2d 632 (9th Cir. 1971) (applying in a 42 U.S.C. § 1983 action the Montana statute imposing a two-year limitation in an action upon a liability created by statute.)

We hold that the applicable statute of limitations in an action pursuant to 42 U.S.C. § 1983 is A.R.S. § 12–541(3) and that appellees' motions for summary judgment were correctly granted as to Court Four of appellant's complaint.

The trial court also granted summary judgment in favor of appellees on Counts Two and Three. We must view the evidence in a light most favorable to the losing party and give appellant the benefit of all favorable inferences that may reasonably be drawn therefrom. *City of Phoenix v. Space Data Corporation,* 111 Ariz. 528, 534 P.2d 428 (1975); *Livingston v. Citizen's Utility, Inc.,* 107 Ariz. 62, 481 P.2d 855 (1971). A motion for summary judgment should be granted only when the record demonstrates that there are no material questions of fact, and that as a matter of law, the moving party is entitled to summary judgment. *Town of Paradise Valley v. Gulf Leisure Corporation,* 27 Ariz.App. 600, 557 P.2d 532 (1976). Further, although certain basic facts are undisputed, if factual inferences must be drawn therefrom in order to render judgment and reasonable minds could draw different inferences, summary judgment is not proper. *Scottsdale Jaycees v. Superior Court of Maricopa County,* 17 Ariz.App. 571, 499 P.2d 185 (1972); *Livingston v. Citizen's Utility, Inc., supra.*

Attached to appellant's oppositions to the motions for summary judgment were copies of the criminal complaint and summons, bench warrant, his receipt for posting bond, and his answers to interrogatories. The incident out of which this action arose occurred on July 27, 1975. The basic facts surrounding appellant's arrest are not in dispute. Around 6 p. m., appellant, driving home with his wife and two children, was stopped less than two miles from his home by Deputy Kirmse. Appellant gives the following account of what then occurred:

"I was stopped by the officer near North Swan Road and Calle Burrill where the officer stated I was going 59 miles per hour in a 45 mile hour zone. I advised the officer I may have been doing close to 50 mph, but not 59 mph. He stated his radar unit registered 59 mph. He asked for my drivers license which I gave to him. He then told me to wait in my truck which was parked on the shoulder of the road in front of the officer's car. I waited approximately 10 minutes and then walked back and asked the officer for the ticket. He told me to go wait in the truck. I went back to the pickup, waited another 10 minutes and then again went back and asked the officer for the ticket. He again told me very forcefully to 'wait in the truck'. I asked what was wrong, he gave no answer except to again say to wait in the truck. I returned to the truck, waited another 15–20 minutes, I then went back to the officer and advised him my family wanted to go home to prepare dinner since we had been out most of the day on a picnic and target shooting and could he please give me the ticket. He then stated very forcefully, 'I told you to wait in the truck'. I again asked what was wrong and what was the delay in writing the ticket, I received no anser [sic] except to again have the officer order me to 'stay in the truck'. I again returned to the truck and after approximately another 20–25 minutes another officer drove up behind the first officer, I went back to ask the officer what was the trouble when the first officer stated, 'You are under arrest'. I was completely amazed and asked, 'What is this all about?' At first all he would say was that, 'There is a bench warrant for your arrest'. Finally, he stated he did not know what exactly the bench warrant was for, but 'something about failure to pay city taxes'. He had received this information over the patrol car radio. I then recognized the second officer as a deputy I had previously known over the past several years and he acknowledged that he knew me and had seen me on several occasions when I represented clients in court where he had been a witness and on other occasions. I asked him if he could intercede to clear this matter up the following morning in court. He said he could not; it was up to the

arresting officer. He was only the back-up officer. I then asked what the bond would be and was advised it was $300.00. I then requested to be taken to the city police station where I could post bond. The first officer advised I could not post the bond and he would have to take me to the county jail at Silverbell Road. I then gave my wallet to my wife, whe [sic] was present, she had to drive home to get the other car since she was not familiar with driving a pickup truck. She was told to appear at the City Police Department to post the bond.

I was then place [sic] in the first officer's car and we proceeded toward Silverbell Road and the county jail. I then asked the officer why he waited for over an hour to advise me of the bench warrant. He stated, 'Since your name is Rondelli and all the notoriety of the Mafia in this area', and since I was so large, he called for a back-up officer and it took that long for the back-up officer to arrive.

After we had proceeded west on Grant Road I again requested to be taken to the city police station where I could post bond. I advised him there was some mis-take regarding the bench warrant. The officer communicated my request to someone on the radio and this request was denied. After several minutes I again requested to be taken to the city police station to post bond, by this time we were almost to the freeway on West Grant Road. The officer then communicated my request to someone on his radio and this time was given permission to take me to the city police station to post bond.

He then turned south and proceeded to the police station where I [sic] taken from the car still handcuffed, led into the station where the handcuffs were removed. I requested a copy of the bench warrant and was provided a copy by the clerk at the desk which showed, 'Bench Warrant for Failure to Pay Tax Return, G & A Carpentry, Inc., Statutory Agent, Charles J. Rondelli.' I then personally posted $300.00 bond and left with my wife and children."

Appellant contends that it was error to rule as a matter of law that appellees did not commit the tort of abuse of process. On January 29, 1973, in a complaint [6] issued

6.               "IN THE CITY COURT OF THE CITY OF TUCSON
PIMA COUNTY, STATE OF ARIZONA

THE STATE OF ARIZONA, Plaintiff          CRIMINAL COMPLAINT
vs.                                  Docket No. 4515
G. & A. Carpentry, Inc. Defendant        Police No.
Statutory Agent-Charles J. Rondelli

     Carlos Monreal, Jr. personally appeared before me this 29th day of January, 1973, who being first duly sworn, complains and says upon knowledge, information or belief that G & A Carpentry, Inc. on or about the November 16, 1972 did commit a misdemeanor,
         (Defendant)               (Date)
in the city limits of Tucson, Arizona, as follows: to-wit that he, doing business as G. & A. Carpentry, Inc., 4560 E. Broadway, failed to prepare a tax return showing the amount of the tax for which he is liable for the months of May, July, September, October, and November, 1972, under Business Privilege License # 30834–15, and did fail to mail the return together with a remittance, in the form required by Chapter 19, Sec. 19–131, Tucson Code, 1965, for the amount of the tax to the Office of the Director of Finance, as required by Chapter 19, Sec. 19–124, Tucson Code, 1965.

All of which is contrary to the laws of the State of Arizona and the City of Tucson.

(City Court Seal)            /s/ Carlos Monreal, Jr.
                                 (Complainant)

Subscribed and sworn to before me this 29th day of Jan. 1973.

                                Wm. W. Brashear
                                  CITY MAGISTRATE

4560 E. Broadway"

by the Tucson City Court, G. & A. Carpentry, Inc., a corporation, was charged with a misdemeanor offense, failure to prepare a tax return. Though the corporation was cited as a criminal defendant, appellant's name also appeared as the statutory agent. When a bench warrant[7] was issued by the City Court on April 13, 1973, for the arrest of G. & A. Carpentry, Inc., appellant's name appeared, again as the statutory agent, on the face of the warrant.

■ The gist of the tort of abuse of process is misusing process justified in itself for an end other than that which it was designed to accomplish. "It is an act done under the authority of the court for the purpose of perpetrating an injustice, i. e., a perversion of the judicial process to the accomplishment of an improper purpose." *Younger v. Solomon,* 38 Cal.App.3d 289, 297, 113 Cal.Rptr. 113, 118 (1974). The essential elements of the tort are first, an ulterior purpose, and second, a wilful act in the use of the process not in the regular conduct of the proceeding. Prosser, The Law of Torts, § 121 (4th ed. 1971); *Fite v. Lee,* 11 Wash. App. 21, 521 P.2d 964 (1974); *Aztec Sound Corporation v. Western States Leasing Company,* 32 Colo.App. 248, 510 P.2d 897 (1973); *Nevada Credit Rating Bureau, Inc. v. Williams,* 88 Nev. 601, 503 P.2d 9 (1972);

*Spellens v. Spellens,* 49 Cal.2d 210, 317 P.2d 613 (1957).

■ Appellees' conduct does not embrace either element of this tort. There was simply no evidence that the City of Tucson, in issuing a bench warrant for the corporation's arrest or that Pima County, in arresting appellant pursuant to such warrant, had an ulterior purpose in mind or intended to "perpetrate an injustice". Nor was there any evidence that appellees acted wilfully to procure appellant's arrest for a corporate debt they knew he was not liable for. The only reasonable inference that could be drawn from the undisputed facts is that a mistake was made. Since process was not used to obtain a collateral advantage, *Larsen v. Credit Bureau, Inc. of Georgia,* 279 Or. 405, 568 P.2d 657 (1977), and since there was no form of extortion, Restatement of Torts (Second), § 682, Comment b, the action for abuse of process would not lie.

Appellant's final argument is that it was error to rule as a matter of law that appellees' conduct was not outrageous.

"While Arizona recognizes the tort of intentional infliction of emotional distress, an essential element thereof is conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

---

7.   "IN THE CITY COURT OF THE CITY OF TUCSON
County of Pima, State of Arizona

STATE OF ARIZONA )
                 ) ss.        BENCH WARRANT
COUNTY OF PIMA   )

TO ANY SHERIFF, CONSTABLE, MARSHALL, HIGHWAY PATROLMAN, OR ANY POLICEMAN OR PEACE OFFICER OF THE STATE OF ARIZONA:

You are hereby commanded forthwith to arrest G. & A. Carpentry, Inc. Statutory Agent Charles J. Rondelli and immediately deliver him to the custody of the Chief of Police of the City of Tucson, Arizona, in that the said G. & A. Carpentry, Inc. Statutory Agent Charles J. Rondelli was heretofore admitted to bail on the charge of fail to prepare tax return and has subsequently breached the conditions under which he (she) was so admitted to bail in that he (she) did fail to pay fine.

WITNESS Wm. Brashear, City Magistrate of the City Court of the City of Tucson, County of Pima, State of Arizona, this 13th day of April, A.D., 1973.

Fine $300.00                  /s/  Wm. W. Brashear
4560 E. Broadway                   City Magistrate
Served 07–27–75   1900 hrs
James T. Kirmse # 363 CT Pima County Sheriff's Dept."

490

atrocious and utterly intolerable in a civilized community." *Hixon v. State Compensation Fund,* 115 Ariz. 392, 393–94, 565 P.2d 898, 899 (1977); Restatement of Torts (Second), § 46, Comment d.

It becomes the duty of the court in the first instance, as society's conscience, to determine whether the acts complained of can be considered as extreme and outrageous conduct in order to state a claim for relief. *Cluff v. Farmers Insurance Exchange,* 10 Ariz.App. 560, 460 P.2d 666 (1969); Restatement of Torts (Second) § 46, Comment h. Appellant complained that he was stereotyped as a "Mafiosi", detained with his family for an hour without explanation, searched and handcuffed outside his car in full view of motorists on a street frequently used by his neighbors and friends, treated as a dangerous criminal for the crime of failing to file a tax return, and falsely arrested. Appellant does not even allege, as to the City of Tucson, any outrageous conduct on its part. His complaint is with the arresting officers.

The record, however, does not indicate that Pima County deputy sheriffs committed any acts which could be classified as "outrageous".

"Such conduct may have been annoying or even insulting; it may have been an indignity to plaintiff and conduct unbecoming peace officers, but considered in light of the rule governing this type of claim the conduct complained of is not actionable." *Pakos v. Clark,* 253 Or. 113, 453 P.2d 682, 691 (1969).

The series of acts complained of by appellant in the setting described do not meet the criteria of extreme and outrageous conduct. See *Savage v. Boies,* 77 Ariz. 355, 272 P.2d 349 (1954).

Affirmed.

HOWARD and DONOFRIO, JJ., concur.