651 P.2d 876

**Philip R. NIENSTEDT and Barbara Nienstedt, husband and wife, Plaintiffs-Appellees,**

v.

**Manfred R. WETZEL and Nancy Wetzel, husband and wife, Defendants-Appellants.**

No. 1 CA–CIV 5106.

Court of Appeals of Arizona, Division 1, Department A.

July 8, 1982.

Rehearing Denied Aug. 25, 1982.

Review Denied Sept. 28, 1982.

Law Offices of Donald Maxwell, P. C. by Donald Maxwell and William G. Poach, Jr., Scottsdale, for plaintiffs-appellees.

Black, Robertshaw, Frederick, Copple & Wright, P. C. by Jon R. Pozgay, Phoenix, for defendants-appellants.

## OPINION

HAIRE, Judge.

Appellees, Philip R. and Barbara Nienstedt, husband and wife, commenced this action in Maricopa County Superior Court to recover damages allegedly sustained as a result of abuse of process by appellants Manfred R. and Nancy Wetzel, husband and wife, in prior litigation between the parties. A jury verdict awarded the Nienstedts $7,350 as compensatory damages and $50,000 as punitive damages. The Wetzels have appealed from the judgment entered on that verdict.

Although several issues have been raised on appeal, we will first address appellants' contentions concerning the applicability of abuse of process concepts to the claim involved here, as well as the contention that the evidence was insufficient to justify submission of the claim to the jury.

## ABUSE OF PROCESS

Viewing the evidence in a light most favorable to supporting the judgment, we find that the following facts were established at trial.

In February 1975, Manfred Wetzel, then an attorney licensed to practice law in Arizona, filed a complaint against the Nienstedts in Maricopa County Cause No. C–307988 for breach of an alleged oral contract, fraud and defamation.[1] Appellants and the Nienstedts were neighbors when this complaint was filed and the lawsuit involved an alleged oral contract pursuant to which the parties were to share the cost of building a retaining wall on appellants' property adjacent to the Nienstedts' property. The Nienstedts' liability under the alleged oral contract would have amounted to $780.69. Appellant Manfred Wetzel had purchased the home prior to his marriage to Nancy Wetzel and brought suit solely in his name. The Nienstedts answered the complaint and counterclaimed against both of the appellants on the assumption that Nancy Wetzel, even though not named as a plaintiff in the complaint, might have a legal interest in the home. In his capacity as the Wetzels' attorney, Manfred Wetzel thereafter filed a pleading entitled a "Counter-counterclaim" on behalf of his wife. This pleading was essentially a reiteration of the original complaint naming Nancy Wetzel as the "Counter-counterclaimant."

On May 13, 1975, the Nienstedts filed a motion to dismiss and strike the counter-counterclaim as an improper pleading. On January 29, 1976, the Nienstedts not having filed an answer or a reply, appellants entered their default on the counter-counterclaim. On February 27, 1976, a default hearing before a superior court judge was conducted at which time the default was set aside and the court set April 2, 1976, as the time for hearing the Nienstedts' motion to dismiss and strike, as well as other pending motions. On that date the court, by minute entry order, denied the motion to dismiss

and strike, and stated that following completion of discovery the court would consider realignment of the parties.

On April 27, 1976, appellants entered another default against the Nienstedts on the counter-counterclaim and noticed a default hearing before a court commissioner for May 27, 1976. The Nienstedts filed a motion to quash the default hearing, and at the hearing on this motion the trial court vacated the default hearing and realigned the parties denominating Nancy Wetzel as a plaintiff. The court further joined the counter-counterclaim with the complaint and held that the answer previously filed by the Nienstedts would be considered as an answer to the counter-counterclaim and that the counterclaim previously filed by the Nienstedts would be considered as a counterclaim against both appellants.

Numerous discovery motions were filed by both parties. At one point the trial court imposed sanctions for what it described as obstructionist activities of appellants.

In August 1976, one day prior to the scheduled trial, appellant Manfred Wetzel moved for a continuance. The motion stated that he was committed to represent a client at another trial scheduled on the same day on a matter having a lower cause number. In response, the Nienstedts filed an affidavit stating that appellant Manfred Wetzel did not appear as the counsel of record on that particular case. However, appellant Manfred Wetzel filed an uncontroverted affidavit stating that although his brother's name appeared as the attorney of record, he and his brother had associated on the case and he was in fact trying the case.

In response to one of the Nienstedts' motions to produce, appellants filed a motion for a protective order to prevent disclosure of two tape recordings allegedly containing conversations of the Nienstedts which Manfred Wetzel had filed with the court in a sealed envelope. Manfred Wetzel had indicated to the Nienstedts that these tapes

---

1. The disposition in that action is also on appeal to this court, 1 CA–CIV 5685. It is a separate appeal and is not considered in this opinion.

proved the existence of an oral contract, and if played at trial, could be used to prove perjury by the Nienstedts. He represented to the court that these tape recordings were to be used for impeachment purposes and also were subject to protection because they constituted his work product as an attorney inasmuch as the questions on the tape "were structured" by him. He further requested that the court review the tapes in chambers and determine whether they were privileged as his work product. At the hearing on appellants' motion for the protective order appellants were represented by counsel other than Manfred Wetzel. Following the court's denial of his motion for a protective order, Manfred Wetzel admitted to the court that the tapes were blank, contrary to his prior express affirmation to the court that the tapes contained questions structured by him. The court then found that appellant Manfred Wetzel had deceived the court, had willfully and intentionally failed to comply with the Nienstedts' motion for production, and had filed motions for enlargement of time and for a protective order which were a sham and unjustified. Consequently, the court dismissed appellants'· complaint as a sanction pursuant to Rule 37, Arizona Rules of Civil Procedure, 16 A.R.S. The court further awarded the Nienstedts $500 in attorney's fees incurred on their motion to produce and their response to appellants' motion for protective order, plus their total court costs incurred in that action.

The Nienstedts then commenced this litigation against appellants claiming that abuse of process in the prior litigation had occurred when appellants: sought recovery of punitive damages in a contract action; filed a motion to continue by reason of another pending action in which appellant Manfred Wetzel did not appear as attorney of record; entered default on an improper pleading; entered a second default and scheduled a hearing before a court commissioner when the appellants knew that the trial judge had set aside an identical default

and contemplated realignment of the parties; and failed to act in good faith in discovery proceedings. The Nienstedts contended that in engaging in the aforementioned procedures, the primary goal of the appellants was to utilize processes of the court to harass the Nienstedts by purposely subjecting them to excessive legal fees in defending against appellants' claims. In this connection, there was evidence that during discovery proceedings appellant Manfred Wetzel told the Nienstedts that through this case he was going to make the Nienstedts' attorney a rich man; that he (Wetzel) could break people financially (impliedly through subjecting them to legal fees and expenses); and, that because he was a lawyer representing himself it would not be necessary for him to incur similar fees and expenses.

Against this factual background we now address the legal requirements necessary for the establishment of an abuse of process claim. First, we note that through developing case law the word "process" as used in the tort "abuse of process" is not restricted to the narrow sense of that term.[2] Rather, it has been interpreted broadly, and encompasses the entire range of procedures incident to the litigation process. *Barquis v. Merchants Collection Association of Oakland, Inc.,* 7 Cal.3d 94, 496 P.2d 817, 101 Cal.Rptr. 745 (1972); *Thornton v. Rhoden,* 245 Cal.App.2d 80, 53 Cal.Rptr. 706 (1966); *Younger v. Solomon,* 38 Cal.App.3d 289, 113 Cal.Rptr. 113 (1974); *Foothill Industrial Bank v. Mikkelson,* 623 P.2d 748 (Wyo.1981). Thus it has been held that a request for admissions will, under appropriate circumstances, support a complaint for abuse of process, *Twyford v. Twyford,* 63 Cal.App.3d 916, 134 Cal.Rptr. 145 (1976). *See also Hopper v. Drysdale,* 524 F.Supp. 1039 (D.Mont. 1981) (the noticing of depositions). As applied to this case, we therefore consider as "processes" of the court for abuse of process purposes, the noticing of depositions, the entry of defaults, and the utilization of

---

**2.** See A.R.S. § 1–215(26) which, for statutory interpretation purposes, gives a restricted definition of the word "process".

various motions such as motions to compel production, for protective orders, for change of judge, for sanctions and for continuances.

■ Concerning whether the utilization of any of these processes singly or collectively constitutes an abuse of the court's processes, the Restatement (Second) of Torts (1977), states the general principle as follows:

"§ 682. General principle

"One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process."

Under this view, to establish a claim for abuse of process there must be a showing that the defendant has (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and, (3) harm has been caused to the plaintiff by such misuse of process.

■ Although Arizona case law relating to the tort of abuse of process is not extensive, it appears to be in accord with the Restatement's view, recognizing that the essential elements of the tort include (1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings. We consider this second requirement to be essentially equivalent to the Restatement's element requiring a showing that the process has been used primarily to accomplish a purpose for which the process was not designed. *See Bird v. Rothman,* 128 Ariz. 599, 627 P.2d 1097 (App.), *cert. denied,* 454 U.S. 865, 102 S.Ct. 327, 70 L.Ed.2d 166 (1981); *Rondelli v. County of Pima,* 120 Ariz. 483, 586 P.2d 1295 (App.1978); *Joseph v. Markovitz,* 27 Ariz.App. 122, 551 P.2d 571 (1976); *Gray v. Kolhase,* 18 Ariz.App. 368, 502 P.2d 169 (1972); *Blue Goose Growers, Inc. v. Yuma Groves, Inc.,* 641 F.2d 695 (9th Cir. 1981).

■ We reject appellants' suggestion that we adopt the position taken by some courts which require as an additional element of an abuse of process claim, a showing that the wrongful use of the court's process has resulted in the seizure of plaintiffs' person or property. *See Funk v. Cable,* 251 F.Supp. 598 (N.D.Pa.1966); *Sachs v. Levy,* 216 F.Supp. 44 (E.D.Pa.1963); *Siebrand v. Eyerly Aircraft Company,* 185 F.Supp. 538 (D.Or.1960). Such a requirement has not been set forth in prior Arizona decisions or in the Restatement, and, in essence, would limit the scope of the tort to those instances involving the use of "process" in the strictest sense of that term. As previously indicated, the later authorities interpret "process" as encompassing the entire range of court procedures incident to the litigation process, and do not restrict the tort to the utilization of process in the nature of attachment, garnishment or warrants of arrest.

■ Arizona case law recognizes that the gist of the tort is the misuse of process, justified in itself, for an end other than that which it was designed to accomplish. *Rondelli v. County of Pima, supra; see also* Prosser, The Law of Torts, § 121 (4th ed. 1971). It is immaterial that the process may have been properly obtained or issued as a normal incident of the litigation involved. It is the subsequent misuse which constitutes the misconduct for which liability is imposed. *See* Restatement (Second) of Torts § 682, Comment (a) (1977). On the other hand, the authorities recognize that there is no liability when the defendant has done nothing more than legitimately utilize the process for its authorized purposes, even though with bad intentions. *See generally,* Prosser, Law of Torts, § 121, p. 857 (4th ed. 1971). This same concept is implied in the Restatement's § 682's use of the word "primarily," which is explained in Comment (b):

"b. *'Primarily.'* The significance of this word is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant."

■ Seizing upon the above-quoted language of Comment (b), the appellants contend that even if it is assumed that appellant Manfred Wetzel had an incidental motive or ulterior purpose to cause the Nienstedts to incur substantial legal expenses, nevertheless there can be no liability because appellants merely used the legal procedures available in this litigation for the very purposes for which they were intended. We would agree with appellants' position if the evidence presented in the trial court was such as to require the conclusion that the complained of processes were in fact invoked for legitimate and reasonably justifiable litigation purposes. However, there is evidence from which a trier of fact could have concluded that in many instances the ulterior or collateral purpose of appellant Manfred Wetzel to subject the Nienstedts to excessive litigation expenses was in fact his primary purpose, and that his use of various legal processes was not for legitimate or reasonably justifiable purposes of advancing appellants' interests in the ongoing litigation.

■ Although our research has not revealed any cases in which liability for abuse of process has been imposed where the ulterior or collateral purpose involved has been to expose the injured party to excessive attorney's fees and legal expenses, we can perceive no reason why general abuse of process principles should not apply to such circumstances. *Cf. Ginsberg v. Ginsberg,* 84 A.D.2d 573, 443 N.Y.S.2d 439 (1981) (abuse of process liability imposed when party repeatedly used subpoena processes for the purpose of exhausting the opponent's financial resources); *Board of Education of Farmingdale Union Free School District v. Farmingdale Classroom Teachers Association, Inc.,* 38 N.Y.2d 397, 343 N.E.2d 278, 380 N.Y.S.2d 635 (1975) (involving the use of witness subpoena power for 87 teachers so as to impose financial hardship); *Dishaw v. Wadleigh,* 15 A.D. 205, 44 N.Y.S. 207 (1897) (involving assignment of collection claims to an associate in a distant part of the state, thereby purposely exposing debtors to the inconvenience and expense of attending a distant court).

■ We recognize that the utilization of virtually any available litigation procedure by an attorney will generally be accompanied by an awareness on that attorney's part that his action will necessarily subject the opposing party to additional legal expenses. The range of feeling in the initiating attorney evoked by that awareness might well vary from instances of actual indifference to instances of intense satisfaction. By our holding in this case we do not intend to suggest that liability for abuse of process should result from either of the said instances alone. Liability should result only when the sense of awareness progresses to a sense of purpose, and, in addition the utilization of the procedure for the purposes for which it was designed becomes so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure. As previously stated, there was evidence presented here of many instances from which a trier of fact could have concluded that the ulterior or collateral purpose of appellant Manfred Wetzel to subject the Nienstedts to excessive litigation expenses was in fact his primary purpose, and that his use of various legal processes was not justified or used for legitimate or reasonably justifiable purposes of advancing appellants' interests in ongoing litigation.

## RES JUDICATA

Appellants argue that even if this court determined that a cause of action for abuse of process was properly alleged and proven, this issue was previously ruled upon in the prior litigation, Maricopa County Cause No. C–307988, thus giving rise to the defense of *res judicata*. This contention is based upon the fact that in the prior litigation brought by the Wetzels against the Nienstedts, the trial court dismissed Wetzels' complaint and awarded the Nienstedts $500 in attorney's fees. In that action the court found that attorney Wetzel had willfully abused the processes available to him by misleading the court that the blank tapes constituted his work product. Appellants point out that

the Nienstedts moved to recover $7,350 attorney's fees as a sanction in Cause No. C–307988 and that this motion was denied and no appeal was taken. Appellants argue that since this request for attorney's fees was denied in Cause No. C–307988 it could not be recovered in a separate action for abuse of process.

 Under the doctrine of *res judicata,* a judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. Under the doctrine of collateral estoppel such judgment precludes relitigation of issues actually litigated and determined in the prior suit regardless of whether it was based upon the same cause of action as the second suit. *Industrial Park Corporation v. U.S.I.F. Palo Verde Corporation,* 26 Ariz.App. 204, 547 P.2d 56 (1976). In Cause No. C–307988, the basis for the imposition of sanctions was limited to appellants' activities in relation to the blank tapes. Further, the award of attorney's fees was by the terms of the minute entry order limited to attorney's fees incurred with respect to that issue. Thus, many issues alleged by appellees as constituting abuse of process in Cause No. C–351561 were not addressed in Cause No. C–307988 and the doctrines of *res judicata* and collateral estoppel are not applicable.

 We further note that *res judicata* is an affirmative defense that must be pleaded. Rule 8(d), Arizona Rules of Civil Procedure, 16 A.R.S. Appellants' answer in the instant case does not contain any reference to *res judicata.* Failure to plead *res judicata* constitutes a waiver of this defense. *Hanrahan v. Sims,* 20 Ariz.App. 313, 512 P.2d 617 (1973); *see also Abner v. Arizona Newspapers, Inc.,* 11 Ariz.App. 237, 463 P.2d 543 (1970).

## APPELLEES' FAILURE TO TIMELY ANSWER INTERROGATORIES AND FILE PRE-TRIAL STATEMENT

 The parties had agreed that the interrogatories in question did not have to be answered until after the trial court ruled on appellants' motion for summary judgment. The motion was determined on May 11, 1979 and the parties were informed of the decision on or about May 15, 1979. The answers to interrogatories were received by appellants on May 30, 1979, the day before trial. The interrogatories contained questions relating solely to the identification of witnesses and exhibits that appellees intended to use at trial. The names of these witnesses and exhibits were filed with the court and reflected that the only witnesses to be called were the parties themselves and the only exhibits to be presented were portions of the court's records in Cause No. C–307988.

Rule 26(e)(1), Arizona Rules of Civil Procedure, 16 A.R.S., provides that, unless the parties otherwise agree, if a party fails to identify a witness prior to 30 days before the date of trial, "any witness not so identified shall not be permitted to testify except for good cause shown." However, the trial court has great discretion in imposing sanctions for the violation of the rules of discovery. *Zakroff v. May,* 8 Ariz.App. 101, 443 P.2d 916 (1968). The trial court concluded that no prejudice would result to appellants because of the delay in receiving the answers to interrogatories since the witnesses and exhibits listed were identical to those previously filed with the court. The determination whether to impose a sanction for failure to update interrogatories is within the reasonable exercise of the trial court's discretion. *Greco v. Manolakos,* 24 Ariz.App. 490, 539 P.2d 964 (1975). We do not find that the trial court abused its discretion in refusing to impose sanctions under the circumstances of this case.

 Similarly the trial court has wide discretion under Rule 16(c), Uniform Rules of Practice, 17A A.R.S. governing pre-trial statements. *Packard v. Reidhead,* 22 Ariz. App. 420, 528 P.2d 171 (1974). Appellants filed a pre-trial statement as required by Rule 16 but appellees failed to do so.[3] The

---

3. Rule 16(c)(4), Uniform Rules of Practice, 17A A.R.S. provides:

"(4) The failure of any attorney for the plaintiff to comply with Rule (c)(1) of this rule will

trial court permitted appellees to join in appellants' pre-trial statement and found that no prejudice had occurred to appellants as a result of this joint pre-trial statement. We are of the opinion that the trial court did not abuse its discretion by refusing to dismiss the lawsuit or to place it on the inactive calendar.

## ADMISSION OF TESTIMONY CONCERNING APPELLANT MANFRED WETZEL'S SUSPENSION FROM THE PRACTICE OF LAW

Prior to trial the court granted appellants' motion *in limine* to exclude any reference during trial to appellant Manfred Wetzel's suspension from the practice of law. However, the court subsequently reversed its ruling and informed counsel in chambers that it would permit a limited inquiry into this issue because during the course of appellant Wetzel's testimony he had on several occasions, before the jury, accused appellees' counsel of unethical and illegal conduct. The court restricted such inquiry as follows:

"... the Court has now advised counsel that the plaintiffs through their counsel may if they choose to do so ask defendant Wetzel whether or not he has been suspended indefinitely from the practice of law by the Arizona State Supreme Court because of ethical violations of the Code of Professional Responsibility.

"The Court has further advised counsel that if an affirmative response to said question is given by Mr. Wetzel, that the Court will not allow further inquiry into said subject matter."

Appellees' counsel asked appellant Wetzel whether he had been so suspended. Appellant responded affirmatively and no further reference was made to this matter.

Appellants argue that the trial court erred by admitting this testimony because

render the party represented by such attorney subject to judgment of dismissal or assignment of the case to the inactive calendar."

**4.** Rule 401, Arizona Rules of Evidence, 17A A.R.S., provides:

it was irrelevant and therefore inadmissible or, alternatively, because even if relevant, its probative value was outweighed by its prejudicial effect requiring its exclusion pursuant to Rule 403, Arizona Rules of Evidence, 17A A.R.S.

■ Appellants argue that appellant Wetzel's suspension from the practice of law did not make it "more probable" that an abuse of process was perpetrated on appellees and therefore it was not relevant.[4] However, this argument ignores the fact that evidence of appellants' suspension was not introduced to prove the existence of abuse of process but to impeach appellant Wetzel's credibility in making purportedly authoritative statements on legal ethics. This evidence was relevant for impeachment purposes.

The trial court may exclude relevant evidence pursuant to Rule 403, Arizona Rules of Evidence, 17A A.R.S., which provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The trial court has wide discretion pursuant to this statute. The record in this case reflects thoughtful consideration by the trial court in balancing the potential prejudicial effect of evidence concerning appellant Manfred Wetzel's professional status and its relevancy to issues brought into the trial by appellant himself. The admission of evidence is a matter largely within the discretion of the trial court and its ruling will not be disturbed except where there is an abuse of discretion. *Circle K Corporation v. Rosenthal,* 118 Ariz. 63, 574 P.2d 856 (App. 1977); *Butler v. Wong,* 117 Ariz. 395, 573 P.2d 86 (App.1977). Given the fact that appellant himself brought the issue of legal

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

ethics into the trial and because the trial court carefully limited the inquiry into appellant's suspension to one question and one answer, we conclude that the trial court did not abuse its discretion in admitting this evidence.

### EXCESSIVE VERDICT

Appellants do not contest the award of $7,350 as actual damages except on the basis that the actual damages were precluded by the *res judicata* effect of the superior court decision in Maricopa County Cause No. C–307988. As previously discussed, the award of attorney's fees in the prior action related only to the award of fees relative to appellees' motion to produce and response to appellants' motion for protective order. The record in this matter contains testimony that the attorney's fees sought in the present action were fees incurred in excess of the amount awarded in the prior action. Appellees also sought compensatory damages in the present action for mental suffering. The jury verdict does not specify in its award of actual damages the amounts granted for attorney's fees or mental suffering. Therefore, we make no assumption with respect to the amounts allocable to these claims.

Appellants' argument on appeal concerning excessive damages is limited to an attack on the award of $50,000 punitive damages which they claim was the result of passion or prejudice. The only arguments asserted in support of this claim are that the failure of appellees to introduce evidence relative to appellants' wealth or financial resources resulted in the jury having no way of relating punitive damages to appellants' economic status. Additionally, it is urged that the amount of punitive damages was excessive in comparison to the actual damages awarded. Appellants speculate that the excessive punitive damages award was caused by the introduction of evidence relative to appellant Wetzel's suspension from the practice of law.

■■■■ In Arizona, there is no compensatory-punitive damage ratio limit. Whether punitive damages are excessive is based solely on the circumstances of each case and one of the factors that the jury may consider in assessing the degree of punishment is the wealth of the defendant. *Dodge City Motors, Inc. v. Rogers,* 16 Ariz.App. 24, 490 P.2d 853 (1971). However, we are aware of no authority, nor has appellant cited any authority, indicating that evidence of the wealth of a defendant is a necessary prerequisite to an award of .punitive damages. For cases holding that such evidence is not required, see *Rinaldi v. Aaron,* 314 So.2d 762 (Fla.1975); *Carrick v. McFadden,* 216 Kan. 683, 533 P.2d 1249 (1975); *Fahrenberg v. Tengel,* 96 Wis.2d 211, 291 N.W.2d 516 (1980); *Rogers v. Florence Printing Company,* 233 S.C. 567, 106 S.E.2d 258 (1958). In any event, a defendant may not complain of the absence of evidence of his wealth when he has made no effort to introduce such evidence. *Rogers v. Florence Printing Company, supra; Rinaldi v. Aaron, supra.*

■■■■ The amount of an award for punitive damages is a matter of discretion with the trier of fact, and such award will not be disturbed unless it is so unreasonable in regard to the circumstances as to show influence of passion or prejudice. *Nielson v. Flashberg,* 101 Ariz. 335, 419 P.2d 514 (1966). The size of the verdict alone is not sufficient evidence of passion or prejudice on the part of the jury. *Jackson v. Mearig,* 17 Ariz.App. 94, 495 P.2d 864 (1972). Punitive damages are allowed where the conduct of the wrongdoer is wanton, reckless or shows spite or ill will. *E.g., Salt River Valley Water Users Association v. Giglio,* 113 Ariz. 190, 549 P.2d 162 (1976); *Country Escrow Service v. Janes,* 121 Ariz. 511, 591 P.2d 999 (App.1979).

■■■■ Where the trial court has refused to interfere with the jury's determination of damages, this court cannot interpose its own judgment on the issue unless convinced that the verdict is so excessive as to suggest passion or prejudice. *Frontier Motors, Inc. v. Horrall,* 17 Ariz.App. 198, 496 P.2d 624 (1972). The record in this matter contains testimony from which a jury could conclude that appellants' conduct reflected

358

spite, ill will and reckless indifference to the interest of appellees. We do not find the verdict so excessive as to suggest passion or prejudice.

The judgment of the trial court is affirmed.

CONTRERAS, Acting P. J., Department A, and OGG, J., concur.