IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ANDREA FAPPANI, a married man,
*Plaintiff/Appellant,*

*v.*

JUSTIN BRATTON and COURTNEY BRATTON, husband and wife,
*Defendants/Appellees.*

No. 1 CA-CV 15-0527
FILED 11-16-2017

Appeal from the Superior Court in Maricopa County
No.  CV2015-003749
The Honorable James T. Blomo, Judge

**AFFIRMED**

COUNSEL

Tiffany & Bosco, P.A., Phoenix
By William M. Fischbach, Timothy C. Bode
*Counsel for Plaintiff/Appellant*

Quinn Law, PLLC, Phoenix
By Ian D. Quinn
*Counsel for Defendants/Appellees*

**OPINION**

Judge Michael J. Brown delivered the opinion of the Court, in which
Presiding Judge Diane M. Johnsen and Judge Jon W. Thompson joined.

**B R O W N**, Judge:

¶1        In this dispute between neighboring property owners, Andrea Fappani appeals the superior court's dismissal of his claim against Courtney Bratton for abuse of process arising out of Bratton's complaints to law enforcement about excessive noise on Fappani's property.[1]  Because Fappani failed to allege facts showing that Bratton *used* or *misused* a judicial process *for an improper purpose*, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        The following facts are taken from Fappani's amended complaint, which alleged that he purchased 20 acres of undeveloped land adjacent to Bratton's property in Rio Verde, an unincorporated area of Maricopa County.  Fappani, a "world-renowned horse trainer," acquired the property intending to build a home for his family, complemented by private recreational facilities.  About one year later, Fappani built a private dirt motorbike track for use by his two children, ages seven and nine.  Bratton developed an "intense dislike" for the "unsightly" track, in part because she believed it disturbed the desert landscape and devalued her property.

¶3        According to Fappani, Bratton has a "long history of hostility and animosity" toward him and his family, evidenced in part by her profanity and "obscene hand gestures" directed at the Fappanis, including the children.  Bratton shared links with neighbors to internet posts that accused Fappani of being a "tax cheat," and encouraged a boycott of his horse-training business.  Bratton also unsuccessfully pursued an administrative claim with the Maricopa County Planning and Development Department, asserting that Fappani's track violated the county's zoning code.  In doing so, she incorrectly asserted that Fappani's property was zoned residential, when in fact it has a rural-zoning designation.  She also falsely asserted that Fappani intended the track for commercial use.

¶4        Bratton contacted the Maricopa County Sheriff at least eight times, complaining that noise from the motorbikes on Fappani's track violated Maricopa County Noise Ordinance P-23, and she encouraged her

---

[1]        Courtney is the relevant actor in these proceedings.  Her husband, Justin, was also named as a defendant based on the allegation that her actions were conducted on behalf of the marital community.

neighbors to make similar complaints.[2]  Sheriff's deputies initially declined to cite Fappani, but ultimately issued two citations to him on different occasions for violating the noise ordinance, using an Arizona Traffic Ticket and Complaint form in each instance.  Bratton was given a form advising her of her right, as a crime victim, to receive additional information about the case.

¶5         Bratton subsequently "demanded" that the Maricopa County Attorney prosecute the alleged noise violations, and the assigned prosecutor "acquiesced to Bratton's demands."  The citations were consolidated and heard at a bench trial in justice court.  Fappani was found not guilty on both citations.

¶6         The day the justice court rendered its judgment, Fappani filed this action in superior court, alleging Bratton committed the intentional tort of abuse of process by causing the sheriff to issue the noise citations and the county attorney to prosecute them.  Fappani further alleged that Bratton's actions were motivated primarily by her desire to force the removal of the track because she disliked it and believed it diminished the value of her property.  Thus, according to Fappani, Bratton "misused and perverted" the criminal justice system, causing him extreme emotional distress.  Fappani also asserted that Bratton's conduct was "motivated almost entirely by spite and ill will" and was carried out "willfully, maliciously, and with an evil mind," justifying imposition of punitive damages.

¶7         Bratton sought dismissal under Arizona Rule of Civil Procedure 12(b)(6), arguing that the amended complaint included no allegation that in making noise complaints against Fappani, she "used any instrumentality of the litigation process, improperly or otherwise, against him."  The superior court granted the motion, denied Fappani's motion for new trial, and this timely appeal followed.

---

[2]        As stated in the record before us, Ordinance P-23 makes it unlawful for a person to allow or cause noise that "disturbs the peace or quiet of any neighborhood if such noise can be heard from within closed residential structures located within 500 feet of the boundary of the property from which such noise emanates."  A person convicted of violating the ordinance is "guilty of a misdemeanor," and may be subjected to a fine not to exceed $300 for the first offense, $500 for the second offense, and $750 for any subsequent offenses.

## DISCUSSION

**¶8** We review *de novo* the court's dismissal of a complaint under Rule 12(b)(6). *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012). Dismissal is appropriate under this rule only where the plaintiff, as a matter of law, would not be entitled to relief under any interpretation of the facts susceptible of proof. *Id.* at 356, ¶ 8. "We assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts, but mere conclusory statements are insufficient." *Id.* at ¶ 9. Further, we will affirm the court's order dismissing a complaint if it is correct for any reason. *See Chandler Med. Bldg. Partners v. Chandler Dental Grp.*, 175 Ariz. 273, 278 (App. 1993).

**¶9** The law is well-established that "[o]ne who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." *Nienstedt v. Wetzel*, 133 Ariz. 348, 353 (App. 1982) (quoting Restatement (Second) of Torts § 682 (1977) ("Restatement")). The specific elements of abuse of process are: "(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings." *Nienstedt*, 133 Ariz. at 353. We therefore address, initially, whether Bratton used a judicial process by complaining to the sheriff about excessive noise, causing issuance of the citations, or demanding prosecution of the alleged noise ordinance violations.

### A.     Use of Judicial Process

**¶10** Abuse of process has been described by this court as "an act done under the authority of the court for the purpose of perpetrating an injustice, i.e., a perversion of the judicial process to the accomplishment of an improper purpose." *Rondelli v. Pima County*, 120 Ariz. 483, 489 (App. 1978) (citation omitted). Thus, a valid claim for abuse of process requires well-pleaded facts alleging that the defendant used a *judicial* process during civil litigation or criminal prosecution. *See Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, 257, ¶ 14 (App. 2004) ("[A] plaintiff must prove that one or more specific judicially sanctioned processes have been abused to establish an abuse-of-process claim."); *see also* 3 Dan B. Dobbs et al., *The Law of Torts* § 594 (2d ed. 2011) (noting that "process" includes a summons, subpoena, garnishment, writ of replevin, arrest warrant, or "other orders directly affecting obligations of persons or rights in property").

¶11      Fappani did not allege that Bratton engaged in any specific court process or procedure, or that she otherwise acted with "authority of the court." Instead, he alleged that Bratton caused the sheriff to issue the noise citations and demanded that the county attorney prosecute the alleged noise ordinance violations. The complaint alleged that Bratton complained numerous times to the sheriff, resulting in the issuance of two citations relating to separate incidents. Each of the citations, however, included the following acknowledgment signed by a deputy sheriff: "I certify upon reasonable grounds, I believe the person named above committed the acts described and I have served a copy of this complaint upon the defendant." Thus, the deputies themselves, not Bratton, exercised their discretion and authority in issuing the citations.

¶12      Fappani directs us to *Ledvina v. Cerasani*, 213 Ariz. 569 (App. 2006), in support of his argument that Bratton's complaints to a law enforcement officer implicated judicial process. In that case, this court held that a person making a false report to a police officer was absolutely immune from a defamation claim. *Ledvina*, 213 Ariz. at 574, ¶¶ 14-15. In analyzing the scope of the immunity afforded to those who make statements to police, the *Ledvina* court noted that several jurisdictions and commentators consider "a complaint to police" as being "the first step in a judicial proceeding," leading the court to conclude that pre-prosecution statements made to police are entitled to absolute immunity from defamation. *Id.* at 573-74, ¶¶ 11, 14. Although pre-prosecution statements to law enforcement are protected by the immunity that applies to statements made during a judicial proceeding, that does not mean pre-prosecution statements constitute judicial process for purposes of an abuse of process claim. Stated differently, contacting law enforcement to complain about a neighbor's conduct is not use of a judicial process. It may be the first step to initiate a judicial proceeding for purposes of defamation law, but for abuse of process, a plaintiff must show that a defendant used an instrument of court process, and that did not happen here.

¶13      Nor are we persuaded by the *Ledvina* court's observation that someone immune from defamation for falsely reporting a crime still might face liability for abuse of process. *See id.* at 575, ¶ 15. That statement, clearly dicta, is not supported by any authority holding that merely reporting a crime constitutes *use of a judicial process* as required for an abuse of process claim. Moreover, as recognized in *Ledvina*, the purpose of granting immunity to complainants in defamation actions is to avoid chilling complaints to law enforcement—a rationale equally applicable here. *See id.* at 573, ¶ 12 ("The mere possibility of retaliatory defamation claims would also tend to discourage free and unfettered reporting to law enforcement

5

authorities to assist the detection and prosecution of criminal activity."); *see also* Ariz. Const. art. II, § 2.1(A)(1) (providing that victims of all crimes are to "be free from intimidation, harassment, or abuse, throughout the criminal justice process").

¶14 Analysis of the Iowa Supreme Court's decision in *Fuller v. Local Union No. 106 of the United Bhd. of Carpenters & Joiners of Am.*, 567 N.W.2d 419 (Iowa 1997), is instructive. In that case, two carpentry union members, Fuller and Schafer, were competing for the position of union business agent. *Id.* at 421. Following a social event where Fuller was seen drinking a beer, Schafer called the police to report that Fuller was driving while intoxicated. *Id.* Police stopped Fuller, but then released him after determining he was not impaired. *Id.* Among other claims, Fuller sued Schafer for abuse of process, but the trial court dismissed the claim, finding Schafer's call to police was not a "use of process." *Id.* at 421-22. The supreme court affirmed, concluding that "the mere report to police of possible criminal activity does not constitute legal process." *Id.* at 422. The court reasoned: "One might criticize selfish or improper motives prompting a false or reckless report. Extreme cases can be imagined in which such a report might become actionable on another basis. But a report to the police is not sufficient to constitute 'legal process' required for an abuse-of-process claim."[3] *Id.* We likewise hold that reporting an alleged crime to law

---

[3] Some jurisdictions recognize private criminal complaints, in which a complainant initiates a criminal proceeding by alleging under oath that a criminal offense has been committed. *See*, *e.g.*, *Harmon v. Carco Carriage Corp.*, 895 S.W.2d 938, 939 (Ark. 1995) (noting that an auto lessor "completed an affidavit" for an arrest warrant, from which a judge found probable cause for arrest); *Garcia v. Whitaker*, 400 S.W.3d 270, 275 (Ky. 2013) (recognizing procedure where "the complainant files a criminal complaint and swears to the facts alleged, after which the prosecuting attorney and judge make a determination as to whether probable cause exists"); *Wozniak v. Pennella*, 862 A.2d 539, 542 (N.J. Super. Ct. App. Div. 2004) (noting that a landlord "filed a criminal complaint" against a tenant). In such circumstances, the private complaint initiates the court proceeding and thus may implicate judicial process. Unlike those situations, Fappani did not allege that Bratton herself filed any court document. Instead, after receiving Bratton's complaints, the sheriff's deputies signed and issued the citations to Fappani; from that point, it was within the county attorney's discretion to decide whether the charges would be prosecuted.

enforcement does not constitute judicial process for purposes of establishing an abuse of process claim.

¶15        Nor do we find persuasive Fappani's broad assertion, without citation to authority, that a victim's demands to a prosecutor implicate judicial process.[4]  A prosecutor has discretion to prosecute such cases as he or she deems appropriate; thus, whether a case is prosecuted is not controlled by the victim or anyone else. *See State v. Murphy*, 113 Ariz. 416, 418 (1976) (recognizing that the "duty and discretion to conduct prosecutions for public offenses rests with the county attorney"); *see also* Arizona Revised Statutes section 11-532(A) (duties of county attorney); *cf. McCleaf v. State*, 190 Ariz. 167, 170, 172 (App. 1997) (finding that judge's decision not to issue arrest warrant for probationer accused of violating probation effectually superseded the probation officer's recommendation to do so).  Here, at most, Fappani alleged that Bratton demanded he be prosecuted for the noise ordinance violations.  Demanding that the county attorney prosecute a criminal violation of law, without more, does not implicate judicial process. *Cf. Crackel*, 208 Ariz. at 258, ¶ 15 (noting that an abuse of process claim "must be based on something more than the opposing party's mere persistence in the litigation").

## B.    Improper Purpose

¶16        Even assuming Bratton used one or more judicial processes by repeatedly contacting the sheriff's office with noise complaints or demanding that the county attorney prosecute the citations, Fappani's amended complaint failed to properly allege the second element of abuse of process—a willful act carried out for an ulterior purpose that was not proper in the regular conduct of the proceedings.  "[T]he gist of the tort is the misuse of process, justified in itself, for an end other than that which it was designed to accomplish." *Nienstedt*, 133 Ariz. at 353; *see also* Restatement § 682 cmt. b ("For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended.").  Abuse of process exists only when the use of

---

[4]        The complaint's allegation that Bratton "caused" or "demanded" the county attorney to prosecute Fappani is not based on well-pleaded facts. *See Coleman*, 230 Ariz. at 356, ¶ 9 (explaining that "conclusory statements are insufficient").  Fappani's complaint does not allege what Bratton did or said, when it was done, or to whom or how she communicated.  Nonetheless, for purposes of our analysis, we presume that Bratton contacted the county attorney's office and "demanded" that it prosecute the noise violations.

judicial process "for which it was designed becomes so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure." *Nienstedt*, 133 Ariz. at 354.

¶17　　　　The requisite improper purpose may be found when, for example, one uses the litigation process as a "form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.  There is, in other words, a form of extortion . . . ." *Morn v. City of Phoenix*, 152 Ariz. 164, 168 (App. 1986); *cf. Nienstedt*, 133 Ariz. at 354 (citing cases finding liability for abuse of process based, respectively, on repeated use of subpoena processes to exhaust opponent's resources, use of witness subpoena power to compel testimony by many teachers in order to impose financial hardship on the school district, and assigning collection claims to a distant part of the state to purposely require debtors to attend a distant court).

¶18　　　　Fappani alleged that Bratton complained to the sheriff about noise from the track and demanded the county attorney prosecute the resulting citations because she did not like the track's noise, thought the track devalued her property, and wanted to force Fappani to move out of the area and/or remove the dirt track.  Based on these allegations, Fappani alleged that Bratton "misused and perverted the criminal justice system to obtain an unjustifiable collateral advantage and/or form of extortion calculated to serve Bratton's own personal and pecuniary interests and to cause Fappani to incur excessive litigation expenses defending" the two citations.  Although Fappani alleged generally that Bratton sought to obtain a collateral advantage and used a form of extortion, he cites no authority suggesting it would be improper for a property owner to want to preserve his or her property value by trying to prevent unlawful practices on adjacent property.  Nor do mere unsupported references to "extortion" or "collateral advantage" salvage the claim.  Fappani failed to allege acts constituting coercion or extortion, in any form, and whatever expenses Fappani incurred in defending the noise prosecution were not rendered excessive by anything Bratton did in causing the prosecution to occur.

¶19　　　　Our review of pertinent authorities supports the conclusion that, even assuming Fappani properly pleaded that Bratton used a "judicial process," he did not properly allege that Bratton used the court system for a purpose other than that for which it is designed, or that she did more than seek to "carry out the process to its authorized conclusion," even if she was motivated by spite, ill will, and malicious intentions.  *See Morn*, 152 Ariz. at 168 ("[E]ven a pure spite motive is not sufficient where process is used only

to accomplish the result for which it was created.") (citation omitted); Restatement § 682 cmt. b ("[T]he entirely justified prosecution of another on a criminal charge, does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm."); *cf. Nienstedt*, 133 Ariz. at 354 (affirming judgment for abuse of process based on appellant's use of legal process in various ways that were not tied to legitimate purposes of advancing interests in the ongoing litigation and were intended to subject the opposing party to excessive expenses); *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1060-61 (D. Ariz. 2012) (finding that plaintiff, a superior court judge, stated a valid claim for abuse of process based on defendants having served plaintiff with a federal RICO suit by hiring a process server "whom they knew or should have known had been previously prosecuted for threatening to kill" the plaintiff, and noting that "this is quintessentially the type of allegation that supports a claim for abuse of process").

¶20　　　As alleged, Bratton sought enforcement of the county's noise ordinance and wanted the court to find Fappani guilty of the alleged violations because she disliked the track's noise and thought it devalued her property. Arizona's judicial system, particularly in municipal and justice courts, is designed to resolve the types of misdemeanor violations that Bratton reported, and she did no more than use the system for this purpose. Therefore, assuming the truth of Fappani's well-pleaded allegations against Bratton, we conclude he has failed to state a claim upon which relief could be granted.

## CONCLUSION

¶21　　　For the foregoing reasons, we affirm the superior court's dismissal of Fappani's claim for abuse of process.



AMY M. WOOD • Clerk of the Court
FILED: AA