IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 10, 2016 Session

## DALE J. MONTPELIER, ET AL. v. HERBERT S. MONCIER, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 3-554-15          Deborah C. Stevens, Judge**
———————————————————

**No. E2016-00246-COA-R3-CV-FILED-JUNE 1, 2017**
———————————————————

This is a common law abuse of process case. The plaintiffs contend that the defendant attorney abused otherwise lawful process without authorization and for an improper purpose. The trial court dismissed this case as a matter of law for failure to state a claim upon which relief can be granted pursuant to Rule 12.02(6). We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., joined, D. MICHAEL SWINEY, C.J., filed separate dissenting opinion.

Dale J. Montpelier and Joseph F. Della-Rodolfa, Knoxville, Tennessee, appellants, pro se.

Herbert S. Moncier, Knoxville, Tennessee, appellee, pro se.

## OPINION

## I. BACKGROUND

This case[1] arises from a contentious dispute over the ownership of a health care facility, Brakebill Nursing Home, Inc. After their divorce in 1992, W. Lynn Brakebill[2] and Jack F. Brakebill each owned 50 percent of the common stock of the facility. The

[1]Appellee's motion to consider post-judgment facts, filed on February 1, 2017, is hereby granted.
[2]Now deceased.

record reveals a tense relationship existed between the two former spouses. Mrs. Brakebill was eventually diagnosed as mentally incompetent.

According to Mr. Brakebill, in December 2011, W. Lynn Brakebill transferred all of her 255 shares of the nursing home to her grandchildren. Shortly thereafter, in February 2012, she allegedly transferred 205 shares of the same stock to her daughter and 25 shares of the same stock to her daughter's husband. W. Lynn Brakebill responded that the purported transfers lacked any intent to actually transfer ownership because she lacked legal capacity.

The defendant/appellee in the instant case, attorney Herbert S. Moncier, represented W. Lynn Brakebill in *In re Criminal Contempt of Court: Jack F. Brakebill*, Knox County Chancery Court, No. 156011-1 (the "Contempt Case"). Moncier further filed four other Knox County Circuit Court lawsuits against Jack F. Brakebill on behalf of clients ("the Circuit Court Cases"). The plaintiffs/appellants in this case, attorneys Dale J. Montpelier and Joseph F. Della-Rodolfa, ("Attorneys") represent Mr. Brakebill. The Circuit Court Cases were consolidated by the Knox County Circuit Court for discovery purposes with the lead case as No. 2-65-14. Due to conflicts of interest, Moncier subsequently withdrew from representation of James Wilkerson and J. Mitchell Wilkerson (relatives of Mrs. Brakebill) in two cases and was replaced by attorney James Stovall.

On August 31, 2015, new counsel for the Wilkersons filed a "First Amended Complaint" in case 2-65-14, in which a cause of action under federal law was alleged. The following month, Jack F. Brakebill and Donna Brakebill (individually and as trustee), as defendants in 2-65-14, removed the case to federal court. The notice of removal was signed and filed by Montpelier as counsel for Jack and Donna Brakebill. The notice of removal stated:

> [S]ince the other cases do not involve questions of Federal law, the Removing Defendants suggest that the court sever and remand Cases 2-73-14, 1-90-14, and 1-170-14 to the Circuit Court for Knox County, Tennessee, pursuant to 28 U.S.C. 1441(c)(2).

On September 30, 2015, Moncier served a Rule 11 motion on plaintiffs Montpelier and Della-Rodolfa via electronic mail ("Rule 11 motion") on behalf of defendant Beth McCarter and W. Lynn Brakebill. The Rule 11 motion was served within 24 hours of Moncier's receipt by electronic mail of the Notice of Removal to U.S. District Court that was filed in the state court. According to Attorneys, Moncier did not obtain the approval of Beth McCarter[3] to serve the Rule 11 motion.

---

[3]Now deceased.

Fifteen days earlier, on September 15, 2015, Melissa Mancini had been appointed the permanent conservator for W. Lynn Brakebill in a Chancery Court case. According to Attorneys, prior to Mancini receiving Letters of Conservatorship, Moncier filed a "Motion to Join As Party Relator Conservator for W. Lynn Brakebill" in one of the Circuit Court cases, and Mancini explicitly moved to intervene in that case on September 25, 2015. Attorneys assert that when the Rule 11 Motion was served on September 30, 2015, Mancini was not W. Lynn Brakebill's qualified conservator and did not have Letters of Conservatorship.

On October 8, 2015, attorney Houston Havasy, Moncier's associate, filed a motion to remand in federal court on behalf of McCarter. In it, Havasy stated that, "The removing defendants' representation that the cases were consolidated for discovery and motions is correct." Attorneys note that despite the fact he knew the truth as stated by his associate acting as his alter ego, Moncier has taken no action to correct his false statement in the Rule 11 Motion.

## Rule 11

Rule 11.03(1)(a) of the Tennessee Rules of Civil Procedure states:

> (1) How Initiated.
> (a) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision 11.02. It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

(Emphasis added.).

Attorneys contend that Moncier litigates cases by (a) serving overly broad oppressive discovery requests and subpoenas, (b) routinely lying in written pleadings and in oral statements to courts, (c) creating bases to disqualify his opposing counsel, including suing them personally, and (d) serving his adversaries with voluminous ad

terrorem sanctions motions such as contempt of court, discovery sanctions, and Rule 11 motions. They assert that this custom and practice of Moncier, particularly using Rule 11 for the improper purpose of avoiding the American Rule on attorney fees, coupled with his refusal to file the Rule 11 motions until he first determines how the underlying "offending" pleading is decided, is an intentional abuse of process.[4] By waiting until he determines if his Rule 11 motions even have merit, Moncier never faces any risk of having to pay attorney fees because he never triggers the reverse loser pays attorney fee provision in Rule 11.03(1)(a) for frivolous motions. That open-ended threat of obtaining money from his adversaries and their attorneys unless they withdraw facts and claims remains throughout his lawsuits. Attorneys contend that their complaint sufficiently alleges that Moncier has primarily sought to increase the burden and expense of litigation to Attorneys and used process for purposes other than would be proper "in the regular prosecution of the charge."

Attorneys further aver that Moncier's service of multiple Rule 11 motions on behalf of himself personally in the Contempt Case, a case in which he is not a party, was an improper act designed for the improper purpose of enriching himself. They assert that the serving of sanctions motions on behalf of himself as a non-party demonstrates that the motions were not designed to be a standard case of advocacy by an interlocutor acting as an advocate, but, rather, a bid by Moncier to obtain money for himself personally if Attorneys did not submit to his threats and give his client a material benefit of a waived defense to the charges. Attorneys note that Moncier has openly admitted that his actions are for the purpose of "fee shifting," as he admitted in writing in the Contempt Case on February 22, 2013, that his purpose in serving Rule 11 motions is "fee shifting where pleadings do not comply with a provision of the rule."

According to Attorneys, Moncier has served an excessive number of sanctions motions, including one on their co-counsel who was not even counsel on the particular case and did not sign the pleading on which Moncier served a Rule 11 motion. He has since served numerous other contempt, Rule 11 motions, and discovery sanctions motions. Attorneys note that Moncier further engages in a "cut and paste" Rule 11 motion practice. For example, the same multiple grammatical errors are made throughout multiple Rule 11 motions he served in the Contempt Case; each of three Rule 11 motions imbedded in motion responses that he served on October 11, 2013, contain an identical string of nine grammatical errors copied verbatim between them. Attorneys assert that these errors support their contention that Moncier's Rule 11 motions are designed to threaten rather than serve as carefully considered motions designed to seek legitimate relief.

Attorneys also contend that the Rule 11 motion was served in the state cases that

---

[4] Moncier notified this court on February 1, 2017, in his motion to consider post-judgment facts, that he had filed the Rule 11 at issue with the state trial court.

had already been removed to federal court and after Moncier had received actual notice of the removal. The state Rule 11 motion was served with respect to a notice that was filed in state court. Only the actual removal could have been for an improper purpose, for which, Attorneys argue, Moncier's only remedy would be to file a Rule 11 motion under the Federal Rules of Civil Procedure. Moncier's Rule 11 motion states: "Dale J. Montpelier is responsible for Rule 11.03(1)(a) sanctions as . . . having filed the Notice of Removal . . . in United States District Court." Attorneys contend that this statement is an admission that the Rule 11 motion was actually served for an alleged violation of the federal version of Rule 11. Moncier did not, in fact, serve the Rule 11 motion alleging a violation of the federal version of Rule 11 in federal court, the proper forum, because he remains disbarred in that court and cannot practice law there. Moncier's Rule 11 motion further notes: "The filing of the Notice of Removal was for a purpose to harass, delay and to create unnecessary legal expense to W. Lynn Brakebill and Beth McCarter in cases 2-73-14, 1-90-14, and 1-170-14." Attorneys assert that neither W. Lynn Brakebill nor McCarter were parties to case 1-170-14, however, and they had no legitimate basis to serve a Rule 11 motion with respect to that case.

Additionally, Moncier's Rule 11 motion states: "Dale J. Montpelier is responsible for Rule 11.03(1)(a) sanctions as being a party in case 1-90-14 . . . ." In fact, the removal notice signed by plaintiff Della-Rodolfa and filed in Knox County Circuit Court was expressly done for Jack Brakebill and Donna Brakebill. Further, Montpelier did not sign the notice; thus, he would have no Rule 11 exposure for the notice filed in state court as a matter of law. Moncier's Rule 11 motion also provides: "Dale J. Montpelier is responsible for Rule 11.03(1)(a) sanctions . . . as having acted in joint concert with Joseph F. Della-Rodolfa signing the Notice of Removal." Attorneys assert that there is no such thing as Rule 11 liability for someone acting in "joint concert" in a violation of Rule 11 by any reading of the rule. Attorneys argue Moncier's statement was an attempt to improperly extort compliance with his demand that the Notice of Removal be "withdrawn" or "corrected."

As to Moncier's contention, "There exists no legal basis as required by Rule 11.02(2) or factual basis as required by Rule 11.02(3) for the statement made in the Notice that 2-73-14, 1-90-14 and 1-170-14 had been consolidated with 2-65-14," Attorneys note that Moncier himself set forth in the caption of his Rule 11 motion that case 2-65-14 was "Consolidated for discovery and pre-trial motions with Knox County case numbers: 2-73-14, 1-90-14, and 1-170-14." Moreover, the Knox County Circuit Court consolidation order, filed with the Notice of Removal specifically stated that:

> By agreement of the parties and for good cause shown, it is hereby ORDERED that the Court consolidates all of the cases referenced above for motion and discovery practice, subject to further order of the Court.

Two of the parties who agreed, through their attorney Moncier, were McCarter and W. Lynn Brakebill.

Attorneys argue that Moncier used the Rule 11 filings in state court for purposes of coercion, as it was the notice of removal filed in federal court that would require action to remand the cases to state court if, in fact, the consolidated cases were removed. By using a state court to serve an otherwise federally-based Rule 11 motion, Attorneys aver that Moncier employed an otherwise lawful process of a state court specifically and primarily to extort a result to which he is not entitled and not in furtherance of a legitimate or reasonably justifiable purpose. They further contend that Moncier used Rule 11 as an extortion device to compel Attorneys to "un-remove" the state case, an improper purpose. Because Moncier could not represent McCarter or W. Lynn Brakebill in federal court because he cannot practice there, Attorneys claim that Moncier's demand for "un-removal" was, in part, for the improper purpose of being able to continue generating attorneys' fees for himself. If Attorneys should fail to acquiesce to the demand and "un-remove" the cases to the detriment of their clients within 21 days, the penalty, accordingly to Moncier's Rule 11 motion, was for Attorneys to have to pay him money. Attorneys aver that another improper motive for Moncier's Rule 11 motion was revenge on adversary counsel for the proper removal of the lead case that specifically raised a claim under federal law.

Moncier argues that before a Rule 11.03(1)(a) motion is actually filed with the court, there is no risk to either party; only if the motion is filed after twenty-one days does the court have authority to award to the party prevailing on the motion the reasonable expenses and attorney fees incurred in presenting or opposing the motion. He contends that a Rule 11.03(1)(a) safe harbor motion served but unfiled is not process within the meaning of state statutes or Rule 4 of the Tennessee Rules of Civil Procedure. Thus, in this case, Moncier asserts that Attorneys fail to state a claim upon which relief can be granted.

## Trial Court Ruling

The trial court dismissed this case based on its unique facts, specifically that a claim for abuse of process cannot lie because Moncier did not file the Rule 11 motion with the court:

> I think, one, that the caselaw does not permit an abuse of process case on an unserved [sic] motion. I think Rule 11 contemplates that a motion will be served on the other side to give them an opportunity to make a determination of whether or not they believe their pleading is in good faith and they're willing to stand on it and, if not, to correct that. I don't think that creates a cause of action in and of itself.

- 6 -

I think when [the] legislature added the provisions to Rule 11 that, I guess, put some more teeth into what Rule 11 permitted and didn't permit, it really contemplated that there would be a sanction through the court system and not any other kind of sanction.

And Mr. Montpelier, I understand your concern in this particular case where you are faced with Rule 11 motions that have been filed, but not served –

\* \* \*

I'm sorry.  Served on you, but not filed with the Court.  And Mr. Moncier's position that until the Court rules – until the actual Court involved in the action rules on the underlying matter, he's not in a position to file his Rule 11 motion, leaving you in somewhat of a limbo state, but I don't think that that state creates a reason for this Court to create a new and separate cause of action for abuse of process and/or for civil extortion.

***And so I think that until the – as you all have indicated, until the Court of Appeals indicates that that is or the Supreme Court indicates that that is a cause of action***, I'm going to choose not to jump into this fray, and I think there is a good legal basis for me not to do so, given the current state of the law.

(Emphasis added.).

## II. ISSUES

The issues on appeal by Attorneys are as follows:

A.  Did the trial court err in dismissing the case based on a finding that abuse of process cannot exist under the facts of the case.

B.  In the alternative, did the trial court err by not allowing the case to proceed under the alternative claim for civil extortion.

Moncier argues that the appeal is frivolous.

## III.  STANDARD OF REVIEW

This case was dismissed as a matter of law for failure to state a claim upon which relief can be granted pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure.  A Rule 12.02(6) motion is the appropriate procedure for testing the legal sufficiency of the allegations contained in the complaint rather than the strength of the plaintiff's proof.  *Webb v. Nashville Area Habitat of Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011).  A motion to dismiss under Rule 12.02(6) "admits the truth of all the relevant and material allegations contained in the complaint."  *Ellithorpe v. Weismark*, 479 S.W.3d 818, 824 (Tenn. 2015). We "must construe the complaint in favor of the plaintiff, accept the allegations of fact as true, and deny the motion unless it appears that the plaintiff can establish no facts supporting the claim that would warrant relief." *See, e.g., Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999).  As to the law, the legal conclusions of the trial court are reviewed de novo without any presumption of correctness. *Trau-Med of Am., Inc. v. Allstate Ins.*, 71 S.W.3d 691 (Tenn. 2002).

## IV.  DISCUSSION

### Abuse of Process

Abuse of process "only deals with perversions of the tools of litigation occurring after a lawsuit has commenced." *See Batten v. Abrams*, 626 P.2d 984, 990-91 (Wash. Ct. App. 1981).  Under Tennessee law, an action for abuse of process lies for the use of legal process to obtain a result that it was not intended to effect, for a wrongful purpose. *Donaldson v. Donaldson*, 557 S.W.2d 60 (Tenn. 1977).  "[A] plaintiff must allege that the defendant employed a specified legal process for a purpose for which it was not designed in order to compel a party to do something that it could not be compelled to do by the use of that process." *In re Prince*, 414 B.R. 285, 294 (M.D. Tenn. Bkrcy. 2009). In Tennessee, to state a claim for abuse of process, two elements must be alleged:

> (1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge.

*Givens v. Milikin*, 75 S.W.3d 383, 400 (Tenn. 2002) (internal quotations omitted); *Bell ex rel. Snyder v. Icard,* 986 S.W.2d 550, 555 (Tenn. 1999).  "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Bell*, 986 S.W.2d at 555 (internal quotations omitted).

- 8 -

"If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint[,] there is no abuse, even if the plaintiff had an ulterior motive in bringing the action . . . ." Matthew Spohn, "Combating Bad-Faith Litigation Tactics With Claims for Abuse of Process, 38 *Dec. Colo. Law*. 31 (Dec. 2009) at 32. An action of abuse of process provides a remedy for a claim arising when a legal procedure, although set in motion in proper form, has been perverted to accomplish an ulterior or wrongful purpose for which it was not designed. *Labonte v. National Grange Mut. Ins. Co.,* 810 A.2d 250, 254 (R.I. 2002).

In 2012, this court ruled "that the mere filing of a motion or document by a party is not automatically considered process within the context of a claim for abuse of process." *Blalock v. Preston Law Group, P.C.*, No. M2011-00351-COA-R3-CV, 2012 WL 4503187, at *4 (Tenn. Ct. App. Sept. 28, 2012) (citing *Rentea v. Rose*, M2006-02076-COA-R3-CV, 2008 WL 1850911, at *4 (Tenn. Ct. App. Apr. 25, 2008)). In *Rentea*, the court, citing 1 Am. Jr. 2d *Abuse of Process* § 2 (2003), defined process as that which emanates from or rests upon court authority constituting a demand of action or restraint.

A claim for abuse of process "normally rests on some writ, order, or command of the court in the course of a judicial proceeding." *Blalock*, 2012 WL 4503187, at *4 (quoting *Merritt-Chapman & Scott Corp. v. Elgin Coal, Inc*., 385 F. Supp. 17, 21 (E.D. Tenn. 1972)). "Such a claim, therefore, refers to times when the authority of the court is used for some improper purpose. *Id.* (citing *Rentea,* 2008 WL 1850911 at *4). The *Blalock* court noted that "[m]any kinds of process can lend themselves to misuse, including attachment, execution, garnishment, sequestration proceedings, arrest of the person and criminal prosecution." Prosser and Keeton on Torts (5[th] ed. 1984), Ch. 21, *Abuse of Process* §121." *Id.* at *4. "The gist of the tort of abuse of process is the misuse of the court's power." 1 Am. Jur. 2d §5 (1994).

Other states have defined "process" more broadly. For example, in *Nienstedt v. Wetzel*, 651 P.2d 876, 880-81 (Ariz. Ct. App. 1982), the appellate court considered as "process" for abuse of process purposes "the noticing of depositions, the entry of defaults, and the utilization of various motions such as motions to compel production, for protective orders, for change of judge, for sanctions and for continuances."

In *Givens v. Mullikin*, 75 S.W.3d 383, 402 (Tenn. 2002), the Tennessee Supreme Court ruled that a claim for abuse of process was made out by a law firm's use of discovery subpoenas, depositions, and interrogatories "for the improper purposes of (1) harassing the Plaintiff; and (2) causing the Plaintiff to incur unnecessary expense to defend against its discovery schemes; [and] (3) weakening the Plaintiff's resolve to pursue the suit to the extent that she will abandon it." *Id.* The Court held: "In this case, we conclude that the Plaintiff's complaint states a claim for abuse of process in the Richardson Firm's use of discovery subpoenas, depositions, and interrogatories." The

Court further stated as follows:

> The test as to whether process has been abused is "whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do." In its most basic sense, therefore, an action for abuse of process is intended to prevent parties from using litigation to pursue objectives other than those claimed in the suit, such as using a court's process as a weapon "to compel [another party] . . . to take some action or refrain from it." It is the use of process to obtain this "collateral goal" – a result that the process itself was not intended to obtain – that is the very heart of this tort. The essential question to be answered . . . is whether the use of process to discourage the other party from continuing the litigation is a sufficiently "collateral goal" to give rise to tort liability.

*Givens*, 75 S.W.3d at 400-401 (internal citations omitted). The Court noted that "no claim of abuse will be heard if process is used for its lawful purpose, even though it is accompanied with an incidental spiteful motive or awareness that the use of process will result in increased burdens and expenses to the other party," but "a different case is presented when the *primary* purpose of using the court's process is for spite or other ulterior motive." *Id.* at 401. The Court stated that when counsel's actions "are used with the specific and malicious intent to weaken the resolve of the other party, then one may rightfully claim that the procedures are being used 'to accomplish some end which is without the regular purview of the process.'" *Id.* at 402. The *Givens* Court adopted the following test when abuse of process may lie:

> [W]hen (1) the party who employs the process of a court specifically and *primarily* intends to increase the burden and expense of litigation to the other side; and (2) the use of that process cannot otherwise be said to be for the "legitimate or reasonably justifiable purposes of advancing [the party's] interests in the ongoing litigation."

*Id.* Our supreme court, therefore, has perhaps signaled flexibility in defining what constitutes process.

Attorneys' complaint reveals, inter alia, the following allegations to support their abuse of process claim:

1) The Rule 11 motion was served with respect to a notice that was filed in state court, which filing was mandated by law and thus could not have been done for an improper purpose. Only the actual removal could have been for an improper purpose, for which Moncier's only remedy would be to file a Rule 11 motion under the Federal Rules of Civil Procedure;

2) Moncier did not file the Rule 11 motion in the proper forum – he filed it in an improper forum to seek the result that he cannot seek in the proper forum because of his disbarment in federal court;

3) Moncier served the Rule 11 motion in state cases that had already been removed to federal court after he had received actual notice of the removal;

4) Moncier intentionally set forth in the Rule 11 motion the false statement of material fact that "There exists no legal basis as required by Rule 11.02(2) or factual basis as required by Rule 11.02(3) for the statement made in the Notice that 2-73-14, 1-90-14-and 1-170-14 had been consolidated with 2-65-14" in order to concoct the entire premise on which the motion is based.

5) Moncier did not obtain the approval of Beth McCarter to serve the Rule 11 motion;

6) Mancini was not W. Lynn Brakebill's qualified conservator/did not have Letters of Conservatorship when the Rule 11 was served;

7) Neither W. Lynn Brakebill nor McCarter were parties to case 1-170-14 and had no legitimate basis to serve a Rule 11 motion with respect to that case;

8) Moncier "had no client" with respect to W. Lynn Brakebill at the time he served the Rule 11 motion as her legal rights had already been removed from her and she did not have a qualified conservator;

9) Moncier's Rule 11 motion asserted damages to W. Lynn Brakebill and McCarter in case 1-170-14 when they were not

parties to that case;

10) Moncier's Rule 11 motion asserted that Montpelier was responsible for sanctions in a case Montpelier did not sign the removal notice and in which he would have no Rule 11 exposure.

Presuming, as we must, that all of the factual allegations in Attorneys' complaint are true, and allowing them the benefit of all reasonable inferences, Attorneys arguably met the pleading requirement that Moncier had an ulterior motive. However, we must find that there was no use of process sufficient to sustain the cause of action. As noted in *Rentea*, "[i]t is not simply that any form of legal process . . . is automatically considered process in the context of a claim for abuse of process." The *Rentea* Court required that "[w]ithin the context of tortious abuse of process, process refers to times when the authority of the court is used." *Id.,* 2008 WL 1850911 at \*4. *See Jones ex rel. Adams v. Shelby Cnty, Tenn.,* No. 02-2560-D, 2003 WL 23924841, at \*2 (W.D. Tenn. Sept. 19, 2003). Here, we find no such improper use of the court's authority[5]. We therefore conclude that the complaint fails to state a cause of action for abuse of process. We likewise do not find a viable claim for civil extortion. Moncier's claim that the appeal is frivolous lacks merit.

## V. CONCLUSION

The trial court's dismissal of the case is affirmed. The matter is remanded to the trial court, pursuant to applicable law, for collection of costs assessed below. Costs of this appeal are taxed to appellants Dale J. Montpelier and Joseph F. Della-Rodolfa.

_____
JOHN W. MCCLARTY, JUDGE

---

[5] Not before this Court at this time is the question of whether or not Moncier's alleged procedure of serving a Rule 11 motion on opposing counsel but not filing it, if at all, as stated by the Trial Court, "until the actual Court involved in the action rules on the underlying matter. . ." complies with Rule 11. Whether Rule 11 allows this procedure to be followed which in effect removes or at least greatly lessens the possibility as provided by Rule 11 for the party opposing an unsuccessful Rule 11 motion to have attorney fees and reasonable expenses awarded against the movant is a question that must wait for another day.